TEXAS INSTRUMENTS INCORPORATED, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 91–5136.

United States Court of Appeals, Federal Circuit.

April 13, 1993.

Marshall J. Doke, Jr., Doke & Riley, Dallas, TX, argued for plaintiff-appellant. With him on the brief were Kathy C. Weinberg and Claudia E. Fogle.

Mark A. Melnick, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Terrence S. Hartman, Asst. Director. Also on the brief were Ltc. Leo Wegemer, U.S. Air Force, Captain Timothy J. Saviano, U.S. Army and John Ford, Office of the Gen. Counsel, Defense Contract Audit Agency, of counsel.

Before ARCHER, PLAGER and CLEVENGER, Circuit Judges.

PLAGER, Circuit Judge.

Plaintiff–Appellant Texas Instruments Incorporated (TI or appellant) appeals from an Order of the United States Court of

Federal Claims,[1] which granted Defendant–Appellee United States' (Government or appellee) motion to dismiss two related, consolidated actions for failure to state a claim upon which relief can be granted.[2] In the underlying actions, TI sought damages for breach of two separate contracts, based on "serious instances of misconduct" which they allege breached the Government's express and implied contractual duties of good faith and fair dealing, including those appurtenant to the Disputes Clause found in each of the contracts. We affirm.

### BACKGROUND

TI's actions before the Court of Federal Claims were consolidated for the purposes of the Government's motion to dismiss. The two actions, each with its own Court of Federal Claims docket number, stem from different but similar fact patterns.

### A. Wright–Patterson Air Force Base, Docket No. 90–367C

On June 17, 1976, the Department of the Air Force, Aeronautical Systems Division, Wright–Patterson Air Force Base, entered into a firm fixed price contract with TI for the purchase of homing and warning computers, consoles, and spare parts for the Air Force F–4G Wild Weasel Program. Later, the Government took the position that the pricing in the contract had been defective; TI disagreed.

On February 7, 1985, the contracting officer (CO) issued his decision, concluding that TI had engaged in defective pricing by committing an error in its calculations of General and Administrative expenses. The CO also noted that TI had not used the acceptable weighted average pricing for certain parts, and that TI had failed to disclose to the Government its pricing and its lower costs. The CO issued a unilateral change order to adjust the contract price downward for the defective amount—$114,246.

TI appealed the CO's decision to the Armed Services Board of Contract Appeals (ASBCA or board), pursuant to the Disputes Clause of the underlying contract. On November 7, 1988 the ASBCA ruled in favor of TI, concluding that "the Government has not shown that non-disclosure had an effect on, or increased, the negotiated price." *Appeal of Texas Instruments Inc.*, 89–1 BCA ¶ 21,489, 1988 WL 134394.

On August 28, 1989, TI submitted a claim to the CO, seeking payment of the attorney fees it had incurred in appealing the defective pricing decision of the CO to the board. The fees were claimed as damages incurred as a result of the Government's alleged breach of contract, specifically, abuse of the disputes resolution process. The CO issued his final decision on October 26, 1989, denying the claim.

TI appealed the denial of its claim to the Court of Federal Claims. TI argued that the Government breached its contract when it conducted its audits and wrongfully raised and pursued its claim and issued its decision that TI had been guilty of defective pricing. The Government was alleged to have breached both its obligation under the Disputes Clause and its implied obligation of good faith and fair dealing. TI sought the attorney fees and investigative expenses incurred in appealing the CO's defective pricing decision to the board.

### B. Department of the Army, Docket No. 90–492C

Pursuant to a basic ordering agreement entered into on December 16, 1977, the Department of the Army issued two delivery orders for supplies and services on September 29, 1978. On September 25, 1981, the CO issued a final decision which concluded that TI had engaged in defective pricing by failing to provide the Government with the most accurate pricing data at its disposal. The CO issued a change order assessing $265,824 against TI.

On December 18, 1981, TI timely appealed the decision to the board. The parties

---

1. The United States Claims Court was renamed as the Court of Federal Claims on October 29, 1992. *See* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

2. Nos. 90–367C, 90–492C (Cl.Ct. June 25, 1991).

subsequently stipulated that the only issues to be tried in the initial, entitlement stage of the appeal would be 1) whether the Defense Contract Audit Agency (DCAA) office at TI was the authorized representative of the CO to receive certain cost or pricing data for the proposals in issue, and 2) whether TI's delivery of a labor microfiche containing certain data to the DCAA office constituted submission of TI's cost or pricing data.

On June 22, 1987, after protracted discovery but apparently before any substantive action by the board, the CO issued a decision retracting his earlier decision. The CO changed his earlier position because "due to the passage of time and the understandable difficulty of key witnesses to recall critical events that occurred from six to eight years ago, the Government's claim for defective pricing cannot be successfully pursued." Thus, despite the CO's continued opinion "that the cost and pricing data submitted by Texas Instruments, Inc. was not current, accurate, or complete as of 2 Oct 79, as certified by Texas Instruments, Inc. in compliance with the Truth in Negotiations Act," he concluded that "witnesses' lack of memory results in the Government having insufficient evidence to establish the necessary factual predicate to prove the extent of the Government's reliance on the data submitted by Texas Instruments."

The Government filed a motion to dismiss the appeal as moot. TI opposed the motion and asked that the appeal be sustained, on the basis that the dispute was not really resolved because the Government could later re-assert the same charges. TI also moved for sanctions, charging that the Government: 1) failed to make reasonable inquiry prior to making and pursuing its claim, thereby abusing the disputes process and violating Fed.R.Civ.P. 11; and 2) failed to comply with certain scheduling orders of the board. TI also charged that the DCAA tampered with a deposition witness. TI requested, as sanctions, that the board render a decision sustaining the appeal and holding in TI's favor on the two issues referred to earlier in the parties' stipulation.

The CO wrote to TI, with a copy to the board, to explicitly make the earlier withdrawal of the final decision prejudicial to any later revival of the same charges, and to note that the Government "waives and releases the claims asserted in the [withdrawn] final decision." The board consequently dismissed the appeal with prejudice on October 13, 1987. The board stated that it was "unable to render a decision on the merits ... for the reason that the Government's claim has been withdrawn with prejudice...." The board also denied TI's motion for sanctions on the grounds that the Rule 11 and witness tampering charges had not been pursued first in a claim to the CO, and thus were not properly before the board, and that the scheduling order charges were untimely.

TI moved for reconsideration by the board. On March 8, 1988, the board issued its reconsideration opinion. In response to TI's request, and with the Government's acquiescence, the board vacated its earlier decision and ordered the appeal be "sustained" rather than "dismissed." The board accordingly found the alternative request for sanctions to be moot, and declined to address that issue.

It was not until September 15, 1989 that TI submitted a claim to the CO demanding payment of TI's attorney fees incurred in appealing the defective pricing decision to the board. On February 14, 1990, the CO issued a final decision denying the claim.

TI then brought its claim for attorney fees to the Court of Federal Claims. TI alleged that the Government breached its contract by its "actions in issuing the contracting officer's decision and in the discovery stage of TI's appeal," which actions TI characterized as negligent, arbitrary, capricious and in bad faith. TI asserted that those actions comprised an abuse of the Government's "powers, responsibilities, and discretion" under the Disputes Clause, as well as a "breach of the implied duty of good faith and fair dealing implicit in all contracts." TI also reasserted its allegations that the Government violated Fed. R.Civ.P. 11 and that it tampered with a witness during discovery. Alternatively,

TI alleged that the Government's actions constituted a "constructive change." Under either theory, TI claimed that the Government's actions damaged TI by requiring TI to expend time, money and effort investigating and defending against the improper allegations. TI asked for damages in the amount of over $127,600 for the attorneys' fees incurred in the defective pricing action.

### C. The Court of Federal Claims Decision

The Court of Federal Claims consolidated the two actions, Nos. 90–367C and 90–492C. In its Order filed June 25, 1991, the Court of Federal Claims dismissed TI's claims on the ground that TI had failed to state a claim upon which relief could be granted.

The Court of Federal Claims noted that while "[t]aking plaintiff's allegations as true, as we must for the purposes of this motion, defendant's actions are disturbing. However, the issue is whether there is any relief that this court can offer to plaintiff." *Texas Instruments, Inc. v. United States of Am.*, Nos. 90–367C, –492C, slip op. at 3 (Cl.Ct. June 25, 1991).

The Court of Federal Claims compared the present situation to that in *Smithson v. United States*, 847 F.2d 791, 794 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The Court of Federal Claims described *Smithson* as a case "where appellants alleged that a government agency engaged in 'arbitrary, capricious, culpable and bad faith conduct toward appellants....' The Federal Circuit found that this was 'not a true contractual claim, but a tort claim against the Government for misfeasance and misconduct; that claim is, of course, outside. the Claims Court's jurisdiction.'" *Texas Instruments*, slip op. at 4.

The Court of Federal Claims further held that, even if the Government *had* breached an express or implied term of the contract, "'it is [nevertheless] well-settled [that] in the absence of specific statutory authority, expenses incurred in litigation, whether legal, accounting, secretarial or other, are not award[ed against the United States].'" *Texas Instruments*, slip op. at 5 (quoting

*Estate of Berg v. United States*, 687 F.2d 377, 383, 231 Ct.Cl. 466 (1982) (quoting *Kania v. United States*, 650 F.2d 264, 269, 227 Ct.Cl. 458, *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981))).

The Court of Federal Claims explained:

The United States has waived its immunity to permit awards of attorney fees under certain circumstances before administrative boards (5 U.S.C. § 504 (1988)) and courts (28 U.S.C. § 2412 (1988)). Plaintiff concedes that 5 U.S.C. § 504 is not available to it because of the limitations of that statute. (Assets may not exceed $7 million.) Plaintiff points out that 28 U.S.C. § 2412(b) contains no such restriction, and urges us to award it attorney fees under that section.

However, 28 U.S.C. § 2412(b) does not apply to administrative proceedings under the circumstances here. Plaintiff comes to this court for the first time asking for attorney fees incurred in an administrative action. Section 2412(b) states, "[a] court may award reasonable fees and expenses of attorneys ... *to the prevailing party* in any civil action brought by or against the United States *... in any court having jurisdiction of such action.*" (Emphasis supplied). Plaintiff is not a prevailing party in this court and the statute does not encompass administrative agency actions....

... Whether characterized as litigation costs or contract damages, plaintiff's counsel fees are not recoverable in this court. *Kania*, 227 Ct.Cl. at 467, 650 F.2d at 269.

*Texas Instruments*, slip op. at 5–6.

Thus, the Court of Federal Claims dismissed TI's claims, and did not address the issues of contract breach and bad faith. TI brought its appeal to this court.

TI does not, in its appeal to this court, pursue the argument that the damages it seeks can be awarded pursuant to 28 U.S.C. § 2412. That issue, and whether or not it is even to be considered a viable issue, is thus not before us. Instead, TI argues that:

It cannot be disputed that a party to a contract who is given the authority to

decide disputes between both contracting parties is burdened with heavy duties and responsibilities flowing from the contractual provision giving rise to that power. A contracting officer who represents one of the parties but who, nevertheless, is empowered to decide disputes between the Government and a contractor is held to the highest duty of good faith. The very nature of the contractually imposed Disputes Clause naturally and foreseeably compels a contractor to incur attorneys fees when the Government breaches its duties under the Disputes Clause. In the cases at bar, the Government unquestionably breached its duties under the Disputes Clause, thereby causing TI to incur attorneys fees. These fees are recoverable as [direct] damages for those breaches.

In addition to having the power to award TI its attorneys fees as contract damages, the Court [of Federal Claims] has the inherent power to award a party's attorneys fees under an exception to the American Rule that allows such an award when the party's opponent has acted in bad faith, wantonly, vexatiously, or for oppressive reasons. The circumstances of the cases at bar warrant such a sanction as a deterrent to such governmental conduct in the future.

In brief, TI's theory is that the Government's actions amount to breach of its contractual obligations stemming from the Disputes Clause. Under the Disputes Clause, TI argues, the government representatives are presumed to act in good faith, especially in light of the overwhelming leverage the Clause gives to the Government as one of the contracting parties involved in a dispute. And, the general obligation of good faith and fair dealing is explicitly imposed on the Government by Federal Acquisition Regulation (FAR) § 1.602–2(b)[3].

The Government responds by arguing that

The Court [of Federal Claims] correctly determined that attorney fees and litigation expenses are not recoverable against the Government in the absence of a statute waiving the sovereign immunity of the United States specifically respecting attorney fees and litigation expenses. No such statute authorizes TI to recover the attorney fees it incurred appealing the contracting officers' defective pricing decisions to the board. Moreover, the Government's waiver of sovereign immunity with respect to breach of contract damages does not authorize the award of attorney fees and litigation expenses as breach damages because such expenses are not generally contemplated as components of breach damages. TI's suits were nothing more than an attempt to circumvent the clear bar to its recovery of attorney fees from the Government.

Thus the Government argues that the Court of Federal Claims lacked the authority to award the damages requested by TI, as there is no express authorization of such an award in the present situation:

If TI met [the criteria set out at 5 U.S.C. § 504], it would have qualified for an award of the attorney fees it incurred before the board and could have requested such an award from the board. However, as the [Court of Federal Claims'] decision stated, TI conceded that it could not satisfy the requirements of the act because, among other reasons, its net worth clearly exceeded [the statutory limit of] $7,000,000.

The Government refers to *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), in which the Supreme Court held that the United States is immune from an award of interest absent specific Congressional consent to the award of interest in a particular situation. The Government argues that *Shaw* is akin to its position in the present case, as well as to that of the Court of Claims in *Kania v. United States*, 650 F.2d 264, 227 Ct.Cl. 458 (Ct.Cl.1981). In *Kania*, the Court of Claims rejected the claimant's demand for breach of contract damages in the form of attorneys fees. The claimant, Kania, had agreed to testify before a grand jury in

---

3. 48 C.F.R. § 1.602–2(b) (1991).

return for immunity with regard to the subject matter of his testimony. Later, Kania was indicted by the grand jury; he moved for dismissal of the indictment on the grounds that the Government had violated its agreement not to prosecute. The district court agreed and dismissed the indictment.

Kania sued the Government, arguing that he should recover the costs and damages, including attorneys fees, he incurred while defending the indictment as direct damages issuing from the Government's breach of contract not to prosecute. The Court of Claims rejected Kania's claim and awarded summary judgment to the Government. Although the court determined that there was no contract sufficient to satisfy jurisdiction under the Tucker Act, 28 U.S.C. § 1491, the court stated that:

It is well settled that in the absence of specific statutory authority, expenses incurred in litigation, whether legal, accounting, secretarial, or other, are not awardable as such.

Plaintiff Kania asserts that he is not seeking the costs of litigation or attorney's fees, as such, rather he seeks damages arising from the government's breach of contract. Since the attorney's fees and expenses that he was forced to pay were a result of the indictment returned against him in "breach of contract," plaintiff argues that they are properly compensable as contract damages. ... [An] award [of] counsel fees and other litigation expenses as an element of breach damages would be extremely dubious. It is the kind of consequential damages not normally awarded in contract breach cases. Courts do not, in awarding breach damages, follow through the remote indirect consequences of the breach as distinguished from those directly in contemplation when the contract was made. No matter whether characterized as litigation costs or contract damages, plaintiff's counsel fees are not recoverable in this court.

650 F.2d at 269, 227 Ct.Cl. 458 (citations omitted).

## D. The Key Provisions

The Disputes Clause incorporated into both of the contracts at issue here provides:

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

(b) This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

Armed Services Procurement Regulation § 7–103.12(a).

TI also relies on FAR § 1.602–2(b), which provides that Contracting Officers shall "[e]nsure that contractors receive impartial, fair, and equitable treatment." 48 C.F.R. § 1.602–2(b).

And last but, as will become apparent, not least, 5 U.S.C. § 504 (1988) provides that:

(a)(1) An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. . . .

(2) A party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award under this section, and the amount sought. . . . The party shall also allege that the position of the agency was not substantially justified. . . .

. . . .

(b)(1)(B) "party" means a party . . . who is (i) an individual whose net worth did not exceed $2,000,000 at the time the adversary adjudication was initiated, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the adversary adjudication was initiated, and which had not more than 500 employees at the time the adversary adjudication was initiated; except that [certain] organization[s] . . . exempt from taxation under section 501(a) of [the Internal Revenue Code], or [certain] cooperative association[s] . . . may be a party regardless of the net worth of such organization or cooperative association;

(C) "adversary adjudication" means . . . [or] (ii) any appeal of a [contracting officer's] decision made pursuant to section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605) before an agency board of contract appeals as provided in section 8 of that Act (41 U.S.C. 607) . . . ;[4]

. . . .

(E) "position of the agency" means, in addition to the position taken by the agency in the adversary adjudication, the action or failure to act by the agency upon which the adversary adjudication is based. . . .

## DISCUSSION

Whether or not TI's complaint states a claim for which relief can be granted is a question of law, which we of course review *de novo. Dehne v. United States*, 970 F.2d 890, 892 (Fed.Cir.1992). We turn first to the statutory provision which both parties have suggested comes close to applying, but does not apply, to the present situation.

Section 504 of Title 5 of the United States Code entitles a party, who under the circumstances specified has prevailed against the Government in administrative adversary adjudications, to an award of their fees and expenses incurred during that adjudication. In order for the party to be entitled to those costs under the statute, both the situation and the party must meet certain prerequisites enumerated in the statute.

The party must not be an individual with a net worth of more than two million dollars, or a business or group with a net worth of more than seven million dollars or with more than 500 employees, at the time the adjudication was initiated. 5 U.S.C. § 504(b)(1)(B). The party seeking the award must submit an application for its fees and expenses within thirty days of the final disposition. *Id.* § 504(a)(2). The party must also allege that the position of the agency was not substantially justified. *Id.* The party is then entitled to an award unless the agency official conducting the adjudication finds that the position of the agency was "substantially justified" or that "special circumstances make an award unjust." *Id.* § 504(a)(1).

The parties both acknowledge that TI fails in this case to meet the net worth

---

4. 41 U.S.C. §§ 605, 607 simply outline parameters regarding the procurement, issuance and appeal of a decision of a contracting officer and of any appeal from such a decision to the board of contract appeals.

requirement of the statute. Thus literal application of the statute is not an issue here. But, TI argues, regardless of the statute it is entitled to its fees and expenses as direct damages for breach of contract. The difficulty for TI is not only its failure to come within the terms of the statute, but the impact of that failure on the viability of its alternative theory for recovery.

### A.  5 U.S.C. § 504

The statute awards fees and expenses to certain parties when the position of the agency was not substantially justified. The "position of the agency" is defined not only as the agency's position during the adversary adjudication itself, but also "the action or [inaction] by the agency upon which the adversary adjudication is based." 5 U.S.C. § 504(b)(1)(E). Thus, an award may be available when, for example, **in the course of the adjudication** the agency pursues an argument or issue without substantial justification, or when the agency **in the first instance** acted or declined to act without substantial justification, so as to create the circumstances which formed the basis of, or led directly to, the adjudication.

As it stands today, and as it stood at all times relevant to this proceeding, the statute defines "adversary adjudication" to explicitly include the type of action TI appeals from here—an "appeal of a [contracting officer's] decision ... before an agency board of contract appeals...." 5 U.S.C. § 504(b)(1)(C)(ii). However, the original version of subsection 504(b)(1)(C) did not contain clauses (ii) or (iii). Rather, the subsection only included what is now clause (i), which defines "adversary adjudication" as

an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license.

■ Section 554 covers, in general, all "adjudication[s] required by statute to be determined on the record after opportunity for an agency hearing." In 1983, this court interpreted subsection 504(b)(1)(C) to exclude an award for adjudication before a board of contract appeals, which is not subject to 5 U.S.C. § 554. *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1386–87 (Fed.Cir.1983). However, in 1985, Congress amended subsection 504(b)(1)(C) to add clause (ii). Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, 99 Stat. 183, 184 (1985). The wording of clause (ii), as well as the legislative history of the amendment, demonstrate that the bill "legislatively overrule[d] the result in *Fidelity* by providing statutory authority for attorneys fees" incurred before an agency board of contract appeals. H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. I, at 15 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 144.

That same House Report noted that:

The purpose of the "Equal Access to Justice Act," as originally enacted in 1980, was to expand the liability of the United States for attorneys' fees and other expenses in certain administrative proceedings and civil actions. The primary purpose of the Act was to ensure that certain individuals, partnerships, corporations, businesses, associations, or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights. The Act reduces the disparity in resources between individuals, small businesses, and other organizations with limited resources and the Federal Government.

*Id.* at 4, 1985 U.S.C.C.A.N. at 132–33. Thus it is clear that section 504 applies to fees and expenses incurred before a board of contract appeals as a result of certain actions by the Government, and that section 504 is meant to draw a line, benefitting smaller entities but not those with deeper pockets.

### B.  The Import of TI's Position

■ TI's argument is based on the premise that the Government's actions amounted to a direct breach of the Disputes Clause, which was incorporated into the contracts "by reference," and of FAR

§ 1.602–2(b). Were we to endorse TI's argument, the boundaries of section 504 would dissolve. If a party fits within the parameters of 5 U.S.C. § 504, it may simply claim an award under that section. But, if the party does not fit within those parameters, for example, because of the party's size or net worth, or even if it simply did not timely file an application demonstrating entitlement, TI's theory would provide an escape. The party in that situation could sue for damages by formulating an argument that the lack of substantial justification to support the Government's action was a breach of the Disputes Clause, or FAR § 1.602–2(b), or both.

This result would, in large part, render section 504 superfluous, at least in Board of Contract Appeals settings. If the lack of substantial justification for the CO's actions could be the basis of an action for damages for breach of contract, ostensibly anyone could sue to recover their attorney fees and expenses incurred before the board without regard for recovery pursuant to section 504.

TI argues that its particular situation begs for a greater duty of care, with concomitantly "contemplated" damages, because of the Government's control in both requiring the Disputes Clause and in its role as decision-maker under the clause. We agree with the trial court's assessment that "[t]aking plaintiff's allegations as true, as we must for the purposes of this motion, defendant's actions are disturbing." *Texas Instruments,* slip op. at 3. Governmental abuse as described in plaintiff's complaints cannot be condoned. The question is not whether TI is entitled to have its claim heard, and if proven, given a remedy. The question is whether the remedy can be found in a breach of contract theory.

The problem is that in many, if not most, agency adjudications, similar arguments could be made. The Government in any agency adjudication acts as the decision-maker in the first instance. In almost *any* agency adjudication, if the Government was wrong—if there was an absence of substantial justification on the part of the Government—there would be a basis for claiming a breach of the Government's implied duties of good faith and fair dealing. Section 504 in large part could be rendered practically unnecessary.

Nothing in either the Disputes Clause or FAR § 1.602–2(b) suggests such a result. In light of Congress' express but limited grant of a right to an award to "certain individuals, partnerships, corporations, businesses, associations, or other organizations," we do not accept TI's arguments that such a right could be premised instead on those clauses, incorporated into contracts with the government as a matter of course. An award of money damages from the United States must have some concrete, legislatively authorized basis; that basis has not been shown to exist. *See Shaw,* 478 U.S. at 321, 106 S.Ct. at 2965; *Smithson,* 847 F.2d at 794; *Berg,* 687 F.2d at 383; *Kania,* 650 F.2d at 269; *see also United States v. Fausto,* 484 U.S. 439, 440, 108 S.Ct. 668, 670, 98 L.Ed.2d 830 (1988) (in the context of the entire statutory scheme, the omission of any right displayed a clear Congressional intent to deny that right).

### CONCLUSION

The Court of Federal Claims correctly granted the government's motion to dismiss for failure to state a claim upon which relief can be granted.

**AFFIRMED.**