**Darvin R. LANE, Dwight L. Lane, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE; Daniel Glickman, Secretary of the United States Department of Agriculture; the National Appeals Division of the United States Department of Agriculture, formerly National Appeals Staff of the United States Department of Agriculture; Norman G. Cooper, Director of the National Appeals Division of the United States Department of Agriculture; James Gilliland, General Counsel of the United States Department of Agriculture; the Consolidated Farm Service Agency of the United States Department of Agriculture, formerly the Farmers Home Administration of the**

United States Department of Agriculture; and Grant Buntrock, Acting Administrator of the Consolidated Farm Service Agency of the United States Department of Agriculture, Defendants.

Nos. A2–95–148, A2–95–166.

United States District Court,
D. North Dakota,
Northeastern Division.

June 25, 1996.

1292

Duane G. Elness, Cavalier, ND, for Plaintiffs.

John T. Schneider, United States Attorney, Fargo, ND, L. Benjamin Young, Office of General Counsel, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

Before the court are cross-motions for summary judgment in both of these related cases. The parties agreed that no issues of material fact exist, and that the cases could be consolidated for oral argument, which was held on June 12, 1996. As the cases are legally and factually identical in all relevant respects, the court will continue consolidation to rule on the summary judgment motions. This order will be entered in each file.

### Background

Brothers Dwight Lane and Darvin Lane ("Lanes") each borrowed money from the United States Department of Agriculture (USDA) through the Farmers Home Administration (FmHA).[1] In 1992, the Lanes applied for delinquent farmer loan servicing. The FmHA discovered possible violations of loan agreements, and asked the USDA Office of the General Counsel (OGC) to decide whether the brothers had shown "good faith," which the agency requires for loan servicing. The OGC issued "bad faith" determinations in each case, and FmHA denied the Lanes' applications for servicing. The Lanes appealed to the National Appeals Staff (NAS) of FmHA. While their appeals were pending, Congress passed the Department of Agriculture Reorganization Act, transferring appeals to the National Appeals Division (NAD). In lengthy opinions in both cases stating that the OGC opinion had been "seriously flawed," the NAD hearing officer decided in the Lanes' favor. As prevailing parties, the Lanes applied for fees pursuant

---

1. The FmHA was superseded by the Consolidated Farm Service Agency (now called the Farm Service Agency), pursuant to the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act, 7 U.S.C. § 6932. Because the relevant agency actions in these cases were conducted by the FmHA, the court will use that name.

to the Equal Access to Justice Act (EAJA).[2] The NAD replied that it was without authority to consider their fee applications because the Administrative Procedure Act (APA),[3] and therefore the EAJA, do not apply to NAD proceedings. The NAD cited a proposed USDA regulation, 60 Fed.Reg. 27,044 § 11.4, which has since become an interim final rule, 60 Fed.Reg. 67,298 § 11.4. The government indicates that the Lanes' EAJA applications are the first presented under the NAD statutes.

The Lanes seek 1) judicial review of the NAD decision to refuse to consider their applications for attorneys' fees, and an award of the fees; 2) judicial review of the USDA regulation which says that the EAJA does not apply to NAD proceedings; and 3) costs and fees for pursuing this action.

### Analysis
### I. THE FEE AWARD

■ The refusal to consider the Lanes' fee applications was a final determination by the NAD. Such a final determination is reviewable by this court. 7 U.S.C. § 6999. The court must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The scope of judicial review of agency decisions is narrow. *Bankruptcy Estate of United Shipping Co. v. General Mills,* 34 F.3d 1383 (8th Cir.1994). The agency's action may be set aside "only if it is arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with the law or procedure." *Id.* (citing 5 U.S.C. § 706(2)(A), (D)).

The EAJA provides that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding" unless a hearing officer finds that the agency position was substantially justified. 5 U.S.C. § 504(a)(1). An "adversary adjudication" is an adjudication "under section 554 of this title in which the position of the United States is represented by coun-

sel or otherwise...." 5 U.S.C. § 504(b)(1)(C).

Thus, in order for the Lanes to be entitled to fees, this court must find that 1) the NAD hearings were "under" section 554, 2) the position of the agency was represented by counsel or otherwise, and 3) the NAD hearing officer did not find the agency's position substantially justified.

### 1. *"Under" section 554*

Section 554 is part of the APA, a set of statutes generally applicable to agency proceedings. Section 554 states that it applies "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing[.]" 5 U.S.C. § 554(a).

■ The APA defines an "adjudication" as "agency process for the formulation of an order." 5 U.S.C. § 551(7). An "order" is broadly defined as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). The NAD's action meets these definitions. The NAD statutes, along with the general procedural provisions of the APA, set out the process for the formulation of an order. The NAD followed that process here. The result was a final disposition, even if, as the government points out, the preliminary decision to deny loan servicing was also "final." (The court notes, however, that USDA regulations would have required the Lanes to exhaust their administrative remedies with the NAD appeal before bringing suit in this court.) The NAD's order is no less final and no less adjudicatory simply because a preliminary agency action took place. The NAD appeal thus meets the APA definition of an adjudication.

■ The next question is whether this adjudication was "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a). The government cites cases which establish

---

**2.** 5 U.S.C. § 504.

**3.** 5 U.S.C. §§ 554–557 & 3105.

that the APA itself cannot be the source for the requirement of determination on the record after an opportunity for hearing; that requirement must come from the separate agency statute at issue.[4] But these holdings beg the present question. Here, the NAD statutes are the separate agency statutes that require the hearing, and unlike the statutes at issue in the cases cited by the government, the NAD statutes do set out formal hearing procedures.

The NAD statutes provide that "a participant shall have the right to appeal an adverse decision to the Division for an evidentiary hearing by a hearing officer consistent with section 6997 of this title." 7 U.S.C. § 6996(a). Section 6997 sets out certain procedural requirements for such hearings, including the time and place of hearing (§§ 6997(b) & (c)(1)), the burden of proof (§ 6997(c)(4)), the prohibition of ex parte communications (§ 6997(a)(2)), and the authority of the Director and hearing officer to have access to the case record, to require the attendance of witnesses and production of evidence, and to administer oaths (§ 6997(a)). The hearing is "evidentiary" in nature, and must be held in person unless the appellant agrees otherwise. § 6997(c)(2). The hearing officer is not bound by an agency's previous findings of fact. *Id.* The hearing officer must leave "the record" open after the hearing for further submissions. § 6997(c)(3). If the appellant seeks review of the hearing officer's decision, by the Director, his determination is based in part on the "record from the evidentiary hearing." § 6998(b).

■ These provisions describe the formal, on-the-record type of hearing contemplated by section 554. "Although Section 554 specifies that the governing statute must satisfy

the 'on the record' requirement, those three magic words need not appear for a court to determine that formal hearings are required." *West Chicago, Ill. v. U.S. Nuclear Regulatory Com'n,* 701 F.2d 632, 641 (7th Cir.1983). It is enough that "Congress clearly indicate its intent to trigger the formal, on-the-record hearing provisions of the APA." *Id.* Congress has done so in the NAD statutes.

The government also argues that the NAD hearings are not "required" by statute because they occur only if a participant chooses to appeal. This misconstrues the meaning of section 554. It is true that section 554 does not apply if hearings are available only at the agency's option, or provided for only in regulations, as opposed to statutes. But here, if a participant does choose to appeal, the agency does not have the option of deciding the appeal without a formal hearing. The NAD statutes provide the opportunity for a formal hearing; this is all that section 554 requires. Once the Lanes availed themselves of that opportunity, the NAD statutes required formal, on-the-record hearing procedures.[5] Thus, the NAD hearing was an "adjudication required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a).

Unfortunately, the argument about whether NAD hearings are "under" section 554 does not end here. The government asserts that even if NAD proceedings otherwise meet the definition of an adjudication in section 554, they still are not "under" section 554 as the EAJA requires, because the NAD statutes adopt a comprehensive adjudicative scheme which supersedes the procedures in section 554. In support of this proposition, the government relies principally on *Marcel-*

---

**4.** *E.g., Webster Groves Trust Co. v. Saxon,* 370 F.2d 381, 385–86 (8th Cir.1966); *Springfield Airport Authority v. C.A.B.,* 285 F.2d 277 (D.C.Cir. 1960).

**5.** On this point, the government misreads the holding of *Doty v. United States,* 24 Cl.Ct. 615 (1991). The *Doty* court found that section 554 did not apply to dairy termination program hearings conducted by an agency of the USDA. However, the *Doty* court did not rely on the fact that hearings were only required if requested by a participant. Rather, the *Doty* court explained

that the single reference to an "opportunity for a hearing" in the statute at issue was not enough to evidence a Congressional intent for formal section 554 proceedings. *Id.* at 628 (citing 7 U.S.C. § 1446(d)(5)(B)(i)). The DTP hearings involved "extremely informal evidence gathering," and in contrast to the NAD statutes, the governing statute set out none of the formal, trial-type procedures envisioned by section 554. *Id.* The *Doty* court also relied on the fact that DTP appeals were governed by regulation, rather than, as in the present case, by statute. *Id.*

lo v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). In that case, the Supreme Court found that the deportation hearing provisions of the Immigration Act had superseded the APA. *Id.* at 310, 75 S.Ct. at 761–62. After comparing the two statutes and looking to legislative history, the Court determined that the Immigration Act had used the APA as a model, but had "laborious[ly]" adapted it to the deportation process, creating a complete and distinct set of procedures. *Id.* at 307–10, 75 S.Ct. at 760–62. The Court also relied upon the Immigration Act's statement that " 'The procedure [herein prescribed] shall be the sole and exclusive procedure for determining the deportability of an alien under this section.' " *Id.* at 309, 75 S.Ct. at 761 (quoting 8 U.S.C. § 1252(b)). The *Marcello* Court noted that "[e]xemptions from the terms of the Administrative Procedure Act are not lightly to be presumed," but stated that it would not require Congress to use "magical passwords" to supersede the APA. *Id.* at 310, 75 S.Ct. at 762.

The government compares the Immigration Act and the NAD statutes at length, arguing that like the Immigration Act, the NAD statutes set out a comprehensive procedural scheme that supersedes the APA. But the primary comparison is between the NAD statutes and sections 554, 556, and 557 of the APA. As the Lanes point out, close comparison of the APA and the NAD statutes reveals that most of the procedural provisions appearing in the NAD statutes are additional refinements, covering matters that the APA does not address. For instance, the NAD statutes provide for hearings in the appellant's state of residence (7 U.S.C. § 6997(c)(1)). The APA does not address this detail. Likewise, the APA sections do not contain any analogs to the details found in § 6997(c)(2), which provides that the agency's findings do not bind the hearing officer; or § 6997(c)(3), which provides that the hearing officer can consider evidence that the agency did not know about, and that he shall leave the record open; or § 6997(c)(4), which assigns the burden of proof to the appellant; or § 6997(b), (d), and (e), which prescribe, respectively, the times when the hearing must be held and the decision issued, and the

effective date of the decision. The only instances of duplication are found in § 6997(a), which prohibits ex parte communications and provides that NAD hearing officers have the powers of subpoena and administering oaths. The government argues that Congress shows an intent to displace the APA by referring in § 6997(a)(2)(A) to the definition of ex parte communication found in the APA, 5 U.S.C. § 551(14). But this reference appears only within parentheses. It seems to be an aside, made for the convenience of the reader in finding the meaning of the term "ex parte communication" rather than an intention to supersede the whole remainder of the APA. Furthermore, the general provisions of the APA cover many matters that the NAD statutes do not address.

■ The NAD statutes do not laboriously adapt the APA to the NAD hearing process, nor do they create a complete and distinct set of procedures. Perhaps most importantly, the NAD statutes lack the key "sole and exclusive" language of the Immigration Act in *Marcello*. The Supreme Court recently characterized its holding in *Marcello* as "rest[ing] in large part on the statute's prescription that the [Immigration Act] 'shall be the *sole* and *exclusive* procedure for determining the deportability of an alien under this section.' " *Ardestani v. I.N.S.*, 502 U.S. 129, 134, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991). The NAD statutes contain no similar language. This court cannot conclude that the NAD statutes supersede the APA merely because a very few of their provisions are duplicative. Section 559 of the APA reinforces this conclusion. Section 559 provides that "[s]ubsequent statute may not be held to supersede or modify this subchapter ... except to the extent that it does so expressly."

But the government asks the court to apply another thumb on the scale to avoid the applicability of the EAJA, and that is the rule of strict construction of waivers of sovereign immunity. Citing *Ardestani*, 502 U.S. at 135–37, 112 S.Ct. at 520, the government points out that a partial waiver of sovereign immunity (here, the assessment of fees against the government) must be strictly construed in favor of the government. This is true, but *Ardestani* made the point in a

different context. The Court there was considering whether the EAJA applied when the APA clearly did *not* apply. *Id.* 502 U.S. at 134, 112 S.Ct. at 519.[6] The rule of strict construction of waivers of sovereign immunity "reinforced" the Court's conclusion that the only way to the EAJA was through the APA. *Id.* at 135–37, 112 S.Ct. at 520. Since section 554 did not apply, the EAJA did not apply.[7] The government's reliance on strict construction of waivers of sovereign immunity is inapposite here. Congress provided the waiver of sovereign immunity when it enacted the EAJA, and made clear that it applies when section 554 applies. Congress need not remind us that the EAJA applies with each new statute calling for procedures under section 554. "[O]nce Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to 'assume the authority to narrow the waiver that Congress intended.'" *Ardestani,* 502 U.S. at 137, 112 S.Ct. at 520 (quoting *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979)).

The government's emphasis of legislative history is also unpersuasive. The silence in the NAD statutes on the question of the EAJA's applicability is not ambiguous, because existing statutes already answer the question. The appropriate conclusion is that Congress realized it did not need to address the matter, and the APA would apply by default. The NAD hearing was under section 554 of the APA, and the EAJA applies via the APA.[8]

### 2. *Represented by counsel*

■ The second requirement for meeting the definition of an "adversary adjudication"

---

**6.** The *Ardestani* Court knew at the outset that the APA did not apply because the Immigration Act (at issue again in *Ardestani* ) had superseded it, due to the holding in *Marcello.*

**7.** The other case relied upon by the government on this point, *Fidelity Constr. Co. v. United States,* 700 F.2d 1379 (Fed.Cir.1983), can likewise be distinguished. The statute at issue in that case, the Contract Disputes Act, clearly provided that the proceeding in question was *not* subject to section 554. *Id.* at 1386.

**8.** The Supreme Court's earliest observations about the APA's applicability are instructive:

The Administrative Procedure Act is a ... basic and comprehensive regulation of proce-

---

under the EAJA is that "the position of the United States" must have been "represented by counsel or otherwise...." 5 U.S.C. § 504(b)(1)(C). The "position of the agency" (interchangeable with "position of the United States") is, "in addition to the position taken by the agency in the adversary adjudication, the action or failure to act by the agency upon which the adversary adjudication is based[.]" 5 U.S.C. § 504(b)(1)(E). Although the FmHA did not have an attorney at the Lanes' NAD hearings, this court finds that the position of the agency was "represented by counsel or otherwise" in two respects.

First, the underlying action upon which the adversary adjudication was based (the denial of loan servicing) was itself based upon the position of the USDA Office of General Counsel. The OGC "bad faith" opinion was required by regulation before the FmHA could deny servicing. 7 C.F.R. § 1951.906 (1993). It was the final substantive step in the denial of loan servicing. Indeed, FmHA's denial letters to the Lanes stated that "[t]he decision concerning loan servicing is *due to* an Office of General Counsel opinion which included your lack of good faith ..." (emphasis added). The OGC opinion also was extensively (and critically) reviewed by the NAD hearing officer.

Case law provides very little guidance as to the scope of the underlying action prong of the "position of the agency." One court has explained that:

an [EAJA] award may be available when, for example, in the course of the adjudication the agency pursues an argument or

dures in many agencies, more than a few of which can advance arguments that its generalities should not or do not include them. Determinations of questions of its coverage may well be approached through consideration of its purposes ... One purpose was to introduce greater uniformity of procedure and standardization of administrative practice among the diverse agencies whose customs had departed widely from each other ... [A]ny exception we may find to its applicability would tend to defeat this purpose.

*Wong Yang Sung v. McGrath,* 339 U.S. 33, 36, 41, 70 S.Ct. 445, 448, 450, 94 L.Ed. 616 (1950).

issue without substantial justification, or when the agency in the first instance acted or declined to act without substantial justification, so as to create the circumstances which formed the basis of, or led directly to, the adjudication.

*Texas Instruments Inc. v. United States*, 991 F.2d 760, 767 (Fed.Cir.1993). That is precisely what happened here, and the OGC opinion, far from a mere procedural or technical step in the process, was at the heart of the agency's underlying action.[9]

Secondly, the agency was represented, not by counsel, but "otherwise," at the NAD hearings. Again, case law provides little guidance on the meaning of "otherwise." One court has logically deduced that " 'otherwise' is . . . appropriately read in the context of the entire clause to refer to an individual who represents the position of the United States in a manner similar to that of counsel." *Pollgreen v. Morris*, 911 F.2d 527, 533 (11th Cir.1990). The court went on to explain that "[t]he crucial distinction between the role of counsel and that of an adjudicator is that the former advocates a position while the latter independently assesses the evidence before it. . . ." *Id.* Although this court does not have transcripts of the Lanes' NAD hearings, numerous references in the hearing officer's decisions leave no doubt that the FmHA representatives were *acting as advocates* at the hearings, not independent fact-finders.[10] The NAD hearings, both as provided for in statute, and as conducted in fact, were adversarial in nature. This court will not permit the agency to avoid the application of the EAJA simply because it did not send an "attorney" to the hearings.

The purpose behind the EAJA reinforces this conclusion. A House Report on 1985 amendments which expanded the scope of the EAJA explains that:

> The primary purpose of the Act was to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights. The Act reduces the disparity in resources between individuals . . . with limited resources and the Federal Government.

H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. I, at 15 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 144 (*quoted in Texas Instruments Inc. v. United States*, 991 F.2d 760, 767 (Fed.Cir.1993)).

3. *Substantial justification*

The NAD hearings meet the definition of an adversary adjudication under the EAJA. The Lanes are thus entitled to attorneys' fees "unless the adjudicative officer of the agency [found] that the position of the agency was substantially justified. . . ." 5 U.S.C. § 504(a)(1). The NAD hearing officer made no such finding, and the government does not even attempt to argue this point. If it were necessary, this court would not hesitate to make an independent finding that the FmHA's position was not substantially justified, based on the assessment of the NAD hearing officer. An excerpt of that highly critical assessment is worth reproducing here:

> . . . Darvin Lane did not violate his loan agreements with FmHA nor did he provide FmHA with fraudulent information. The findings support a conclusion that FmHA's loan servicing was inadequate and that FmHA's case files are not maintained in

---

**9.** *Cf. Rowell v. Sullivan*, 813 F.Supp. 78, 81 (D.D.C.1993) (finding that an agency was not "represented by counsel" when the plaintiff had received one letter from an agency attorney which merely informed the plaintiff that certain proceedings would be initiated and was unrelated to the agency's substantive investigation).

**10.** FmHA's representatives at the hearings included the FmHA county supervisor who had denied loan servicing, the FmHA district specialist, and an FmHA contract real estate appraiser (Darvin Lane Appeal Decision at 1).

The hearing officer's written decisions illustrate FmHA's adversarial role with comments such as: "FmHA *alleges* the appellants" had not acted in good faith (*id.*); "FmHA and the appellant presented the following . . . evidence in support of their *arguments* " (*id.* at 9); "The seriousness of the violations *charged* against this borrower . . ." (*id.* at 14); "FmHA *presented evidence* that they requested the borrower . . ." (*id.* at 19) (emphasis added). In addition, both an "independent" real estate appraisal and an FmHA appraisal were presented. This indicates that the FmHA appraisal was not independent.

accordance with procedure. Documents in the files are intermingled with previous year's documents and forms are filed in the wrong position within the servicing file.... Written communications containing misinformation ha[ve] been passed between the FmHA State Office, County Office and OGC.... It is concluded from the findings that a reasonable person would not make a determination that this borrower was fraudulent or lacking in good faith based on the evidence in these matters.

\* \* \* \* \* \*

Lastly, the OGC opinion repeatedly referred to the Guide Questionnaire prepared by the FmHA County Supervisor when preparing their opinion. The Guide Questionnaire as prepared was not a full disclosure to the OGC of the facts of this case. The information furnished in [it] was heavily relied upon by OGC in their determination. Further, OGC was specifically furnished copies of FmHA's memos ... which contained numerous factual errors which could easily confuse a reader due to the complexity of the events in this case. It would be difficult for anyone to figure out the sequence of events on this borrower's transactions without an exhaustive review of these disorganized case files.... It took four months for OGC to provide their opinion to FmHA. While this would have been adequate time to do an exhaustive review of the case files, it appears that OGC used the Guide Questionnaire prepared by the County Supervisor and FmHA memorandums to develop the opinion.... The OGC opinion was a concurrence of the facts presented by FmHA rather than an opinion of the case files sent for review. It is concluded that the OGC opinion is seriously flawed and is not supported by the documentation in the case file.

Darvin Lane Appeal Decision at 13–14, 16.[11]

Because the NAD hearing was "under" section 554, the position of the agency was

represented by counsel or otherwise, and FmHA's position in denying loan servicing was not substantially justified, the Lanes are entitled to attorneys' fees under 5 U.S.C. § 504 for agency proceedings.

■ FmHA's refusal to consider the fee application, based on its determination that the EAJA did not apply, was not in accordance with law. 5 U.S.C. § 706(2)(A). A court usually accords deference to an agency's interpretation of its governing statutes when Congress has left some ambiguity in the statutes. *Bankruptcy Estate of United Shipping Co. v. General Mills,* 34 F.3d 1383, 1390 (8th Cir.1994) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)). That deference is not appropriate here because, as explained above, there was no ambiguity in the relevant statutes about EAJA's applicability.

## II. THE USDA REGULATION

■ In refusing to consider the Lanes' fee application, the NAD relied in part upon a proposed rule (now an interim final rule) stating that the EAJA does not apply to NAD proceedings. 60 Fed.Reg. 67,298 § 11.4. This regulation is contrary to law for the same reasons that the agency's refusal to consider the fee application was contrary to law. In addition, it is not entitled to the normal deference accorded agency rulemaking because the agency was not engaging in normal rulemaking. Rather, as the government agrees, the determination that the EAJA did not apply was a "purely legal question." There were "no interstices in the statute for USDA to fill by regulation because a waiver of sovereign immunity is not a factual or policy issue. It is a matter of pure statutory construction." (United States Br. Resisting Pl.'s Cross–Motion for Summ.Judg. at 6, 8).

## III. COSTS AND FEES FOR THIS ACTION

The Lanes seek an award of costs and fees for this action under the civil suit portion of

---

11. This excerpt is from Darvin Lane's hearing decision. The language used in Dwight Lane's hearing decision is substantially identical, except that the problem was further compounded in his

case because the agency had erroneously relied on information in Darvin Lane's file to support its conclusions in his brother's case (Dwight Lane Appeal Decision at 15).

the EAJA, 28 U.S.C. § 2412. Their request for costs will be granted in the court's discretion under § 2412(a)(1) when they submit appropriate documents pursuant to Local Rule 54.1. As for attorneys' fees, the government correctly notes that this request is untimely. It is also incomplete. The Lanes may submit an application for fees in this proceeding as directed by § 2412(d).

*Conclusion*

For the reasons discussed above, **IT IS HEREBY ORDERED:**

1) In case number A2–95–148, defendants' motion for summary judgment (doc. # 4) is **DENIED.** Plaintiff's cross-motion for summary judgment (doc. # 6) is **GRANTED** to the extent explained below.

2) In case number A2–95–166, defendants' motion for summary judgment (doc. # 4) is **DENIED.** Plaintiff's cross-motion for summary judgment (doc. # 6) is **GRANTED** to the extent explained below.

3) The National Appeals Division decision to refuse to consider the Lanes' application for fees is **REVERSED** as contrary to law. The matter is **REMANDED** to the National Appeals Division for determination of the amount of attorneys' fees to award in accordance with this order.

4) That portion of the USDA interim final rule, 60 Fed.Reg. 67,298 § 11.4, which states that the Administrative Procedure Act and the Equal Access to Justice Act do not apply to National Appeals Division proceedings is **OVERTURNED** as contrary to law.

5) The court will not yet rule on the Lanes' requests for costs and attorneys' fees for this proceeding, but will address such motions when they are properly submitted.