**JOHN C. GRIMBERG COMPANY, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 88–1378.

United States Court of Appeals, Federal Circuit.

March 15, 1989.

Herman M. Braude, of Braude & Margulies, Washington, D.C. argued for appellant. With him on the brief were Judith F. Herman and Michael J. Cohen, of Braude & Margulies, Washington, D.C.

Agnes M. Brown, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director.

Before RICH and BISSELL, Circuit Judges, and BENNETT, Senior Circuit Judge.

BISSELL, Circuit Judge.

The decision of the Armed Services Board of Contract Appeals (ASBCA), *John C. Grimberg, Co.*, ASBCA No. 32288, 88–1 BCA ¶ 20,346 (1987) [1987 WL 46574], *reconsideration denied*, 88–2 BCA ¶ 20,713 (1988) [1988 WL 44422], affirming the contracting officer's denial of the equitable price adjustment claim of John C. Grimberg Company, Inc. (Grimberg), is reversed and remanded.

## BACKGROUND

On December 9, 1983, the United States Navy issued an invitation for bids on construction work at the Bethesda, Maryland Naval Center. The $3,330,000 fixed price contract included fabrication and installation of exterior precast concrete wall panels. Prior to bidding, Grimberg solicited precast panel quotations from several domestic subcontractors but received only one. Arban & Carosi (A & C) quoted a price of $245,000—$165,500 for fabrication and $79,500 for erection, caulking and cleaning. The Navy awarded Grimberg the contract on March 15, 1984. Shortly thereafter, Grimberg unsuccessfully attempted to contact A & C to consummate the subcontract. After failing to reach A & C, Grimberg resolicited the domestic vendors previously contacted and received two quotations of $205,000 and $200,918 covering only the precast panel fabrication. Grimberg, however, subcontracted the fabrication and erection to a Canadian firm, Beer Precast Concrete, Ltd., for $237,000—$120,000 for fabrication and delivery and $117,000 for erection and other miscellaneous work.

The Navy rejected the submittal of panel drawings because use of the Canadian fabricator violated the Buy American Act, 41 U.S.C. §§ 10a–10d (1982) (BAA). Grimberg requested a waiver of the BAA but the Navy refused. Faced with construction deadlines, Grimberg chose to obtain the precast panels from a domestic subcontractor and incurred costs of $200,000 for fabrication, $59,000 for erection, and approximately $23,000 for miscellaneous work.

Pursuant to the contract's disputes clause, Grimberg submitted an equitable adjustment claim for $53,847. The Navy denied the claim, determining that a post-award BAA waiver was not warranted. The ASBCA denied Grimberg's appeal, *Grimberg*, 88–1 BCA at 102,895, and subsequent motion for reconsideration, *Grimberg*, 88–2 BCA at 104,664.

## ISSUE

Whether the ASBCA erred as a matter of law by failing to apply the criteria for determining unreasonable price differentials under the BAA and thereby abused its discretion by not granting an equitable adjustment.

## OPINION

### I.

Grimberg's claim is based on the Navy's failure to grant a post-award exception to the BAA. Without a waiver, Grimberg was prohibited from using the lower priced Canadian fabricated panels. The BAA requires that only domestic materials be used for public works contracts unless the head

of an agency determines that such use is inconsistent with the public interest or the cost is unreasonable. 41 U.S.C. § 10d. The BAA primarily provides a competitive preference to domestic materials in awarding government contracts. Watkins, *Effects of the Buy American Act on Federal Procurement,* 31 Fed.Bar J. 191, 194 (1972); *see also John T. Brady & Co. v. United States,* 693 F.2d 1380 (Fed.Cir.1982) (stating that the BAA "is directed primarily to the period prior to the award").

The BAA is implemented by an Executive Order that provides in pertinent part:

[Section 2.](b) For the purposes of ... this order, the bid or offered price of materials of domestic origin shall be deemed to be unreasonable ... if the bid or offered price thereof exceeds the sum of the bid or offered price of like materials of foreign origin and a differential computed as provided in subsection (c) of this section.

[Section 2.](c) The executive agency concerned shall in each instance determine the amount of the differential referred to in subsection (b) of this section on the basis of one of the following-described formulas ...:

(1) The sum determined by computing six percentum of the bid or offered price of materials of foreign origin.

....

[Section 5.] ... In any case in which the head of an executive agency proposing to purchase domestic materials determines that a greater differential than that provided in this order between the cost of such materials of domestic origin and materials of foreign origin is not unreasonable ... this order shall not apply.

Exec. Order No. 10,582, 3 C.F.R. 230 (1954–58), *reprinted in* 41 U.S.C. § 10d app. at 1042 (1982) (hereinafter Executive Order No. 10,582).

## II.

The ASBCA's interpretation of the BAA is a conclusion of law freely reviewable by this court. *See United States v. Lockheed Corp.,* 817 F.2d 1565, 1567 (Fed.Cir.1987). The ASBCA denied Grimberg's appeal be-

cause it determined that the cost of domestic panels was not unreasonable in light of "the flexibility afforded procuring departments and agencies by Section 5 of the Executive Order [No. 10,582], and in light of the *Brady* guidelines." *Grimberg,* 88–1 BCA at 102,895. With regard to post-award equitable adjustments, we conclude that the ASBCA erred as a matter of law in interpreting the BAA and *Brady.*

■ The ASBCA erroneously construed section 5 of Executive Order No. 10,582 and disregarded the flexibility it affords the agencies in determining BAA waivers. The fact that the head of an agency is empowered to establish greater price differentials under section 5 does not mean that one should be established. Section 5 does not dictate greater price differentials, but rather represents an available option. If the agency head chooses not to exercise that option, the price differentials of section 2 become mandatory for determining what is unreasonable under the BAA. *See L.G. Lefler, Inc. v. United States,* 6 Cl.Ct. 514, 519 & n. 5 (1984) (holding that a waiver must be granted when the price differential standards are met and that the same standards used pre-award should apply post-award); *Keuffel & Esser Co.,* 42 Comp.Gen. 608, 612 (1963) (explaining that the "Executive order fixes the differentials which shall be considered in determining unreasonable cost, unless the agency head determines," under section 5, that a greater price differential is not unreasonable); *see generally* Watkins, 31 Fed.Bar J. 191.

The plain language of Executive Order No. 10,582 supports this conclusion. Section 2(b) provides that the price of domestic materials "shall be deemed to be unreasonable" if it exceeds the price of like foreign materials plus a section 2(c) differential. Section 2(c) requires the executive agency to determine the price differential of section 2(b) based on one of the formulas set forth in section 2(c)(1) and (2). Therefore, in evaluating unreasonableness under the BAA, the formulas of section 2 become mandatory unless the head of the agency determines that a greater price differential should be applied.

■ In this case the fabrication price differential between the Canadian firm and the domestic firm is more than three times the differential established by section 2(c)(1), and the agency head[1] has never determined that an alternative differential should be applied. Therefore, the ASBCA erred in not applying the prescribed formulas.

■ In post-award situations, however, that does not end the inquiry. Post award, an exception to the BAA is granted under the contract's changes clause only where warranted by the circumstances. *Brady*, 693 F.2d at 1385–86. If all existing BAA criteria are met, the decision to grant a change is discretionary. *See John T. Brady & Co.*, VABCA No. 1300, 84–1 BCA ¶ 16,925, at 84,196 (1983) [1983 WL 13698] (interpreting the Federal Circuit's instructions on remand). The ASBCA misconstrued *Brady*, by reading that decision as establishing a narrow range of circumstances for granting post-award exceptions. *Grimberg*, 88–2 BCA at 104,664. *Brady* merely holds that the BAA does not preclude post-award waivers and that additional factors may be considered in determining whether or not to grant an equitable adjustment.[2] *See Brady*, 693 F.2d at 1385–86.

■ In granting an equitable adjustment in the *Brady* remand, the Veterans Administration Contract Appeals Board (VACAB) recognized that "the request for an exception would have resulted in no increase in cost to the Government, in fact there may have been sufficient basis for a credit to the Government." *Brady*, 84–1 BCA at 84,196–97. The VACAB also realized the severe consequences to the contractor that the additional cost would bring and stated:

"[i]t is certainly in the public interest to grant legally permissible exceptions where there is no resulting expense to the Government, and where to grant such an exception serves to increase the public's perception of its Government as one which deals fairly with its contractors." *Id.*, at 84,197.

Here, Grimberg originally bid the panel fabrication at $165,500. After being awarded the contract, Grimberg found that it could not obtain the panels domestically at that price. Grimberg solicited a foreign bid of $120,000 and the Navy improperly denied a BAA waiver. Grimberg, ultimately obtained the panels from a domestic source for $200,000. Had the Navy granted the waiver, no increase in cost would have been incurred and the government may have been entitled to a credit. Instead, Grimberg was saddled with an additional fabrication cost of $34,500 beyond that which it had originally quoted.[3]

The failure to grant the requested waiver was an abuse of discretion. The Navy's actions constituted a constructive change and Grimberg is entitled to an equitable adjustment as prescribed by the contract. Accordingly, we reverse and remand to the ASBCA for a determination of the quantum due Grimberg.

### COSTS

Each party is to bear its own costs.

**REVERSED AND REMANDED.**

BENNETT, Senior Circuit Judge, dissenting.

The issue set forth in the majority opinion is correct. Stated another way, the issue before us is whether the Armed Ser-

---

1. The dissent contends that the head of the agency delegated his authority under section 5 of the Executive Order to the contracting officer. The general provisions of this contract in defining "head of agency" explicitly prohibit delegation to the contracting officer.

2. The dissent's conclusion sets forth a bright line test for permitting post-award exceptions to the BAA. Such a test is unwarranted; the granting of an equitable adjustment is discretionary and should not be so limited.

3. Footnote two of the dissent misreads the function served by the calculation delineated in *Allis–Chalmers Corp. v. Friedkin*, 481 F.Supp. 1256, 1266–68 (M.D.Pa.), *aff'd*, 635 F.2d 248 (3d Cir. 1980). That calculation is for ascertaining the lowest bidder after the BAA surcharges have been properly added to the foreign bid, not for determining the propriety of granting a waiver to the BAA. The dissent's calculations are misleading.

vices Board of Contract Appeals (Board) erred in its determination that Grimberg (plaintiff/appellant) was not entitled to an equitable adjustment under the Changes clause on the grounds Grimberg was not entitled to an exception to the Buy American Act (BAA). 41 U.S.C. § 10a–b, 10d, and Executive Order No. 10,582 (1954), as amended by Executive Order No. 11,051 (1962). I dissent from the conclusion that the Board was in error.

## OPINION

The majority opinion asserts this court's decision in *John T. Brady & Co. v. United States*, 693 F.2d 1380 (Fed.Cir.1982), is precedent for its position. I think not. First, with regard to the express holding of *Brady*, the issue decided was "whether the Board erroneously held that exceptions to the Buy American Act [could not] be granted after the contract [had] been awarded." *Id.* at 1384. In affirming the Claims Court's decision to remand to the Board in that case, this court reasoned that "it may be impossible for the contractor *in some instances* to make a pre-award request for the exemption." *Id.* at 1386 (emphasis added).

The fact situation in *Brady* was such a case. That is, a case where it was impossible for the contractor to make a pre-award request for a BAA exemption. The contractor could not enter a contract with the aluminum supplier since the Veteran's Administration (VA), the contracting agency, had not yet supplied the contractor with specific aluminum sheet sizes. A binding contract cannot be formed without sufficient specificity of the subject matter. It was on these facts that this court in *Brady* decided a post-award exemption to the BAA can in some instances be granted. The facts in the instant appeal, as discussed below, are very different from those in *Brady* and do not merit the same result as was reached in *Brady*.

Second, in addition to there being no express holding in *Brady* for the proposition that pre- and post-awards are treated equally, the rationale expressed in *Brady* also does not support any inferential rule

that a post-award exemption should have been granted on the facts of the instant appeal. The cases discussed and relied upon by the court in *Brady* show that the *Brady* decision cannot support the granting of a post-award exemption (or an equitable adjustment in lieu thereof) except under extraordinary circumstances.

The BCA and Comptroller General (CG) decisions reviewed in the analysis section of *Brady* all demonstrate some of the extraordinary circumstances which would merit a post-award exemption. In one such case, *H.L. Coble Constr. Co.*, 40 Comp. Gen. 644 (1961), the contractor did not seek a pre-award exemption because the contract included one material, copper, on the BAA exemption list, although the agency insisted the contractor use domestic copper regardless. An equitable adjustment was awarded. In a second case, *M.S.I. Corp.*, VACAB No. 503, 65–2 BCA ¶ 5203, due to unavailability of the domestic product after the award, the Board held the government must either grant a post-award exemption or issue a change order deleting the domestically unavailable material from the contract. In reaching its holding, this court in *Brady* stated it agreed with the Claims Court's decision because it "is in accord with the decisions of the Comptroller General which we think have correctly interpreted the Buy American Act and the Executive Order. To hold otherwise would produce *unfair and harsh results* without furthering the objectives of the Act." *Brady*, 693 F.2d at 1386 (emphasis added).

There is a common element in *Brady* and in the Comptroller General and BCA cases reviewed in *Brady* which would have led to unfair results if a post-award exemption had not been granted. In those cases either it was the contracting agency's actions which caused the contractor not to seek a pre-award exemption or the material was not available domestically. Because of the VA's delay in providing the specific dimensions for the aluminum sheeting, the decision in *Brady* does not conflict with the established rule that the contractor bears the risk of acquiring the materials necessary to complete the contract. *WRB Corp.*

*v. United States,* 183 Ct.Cl. 409, 511–12 (1968), *see also Columbus Ry., Power & Light Co. v. City of Columbus,* 249 U.S. 399, 412, 39 S.Ct. 349, 353, 63 L.Ed. 669 (1919) (stating "Unforeseen difficulties will not excuse performance.... 'One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking.' [citing *Day v. United States,* 245 U.S. 159, 161, 38 S.Ct. 57, 58, 62 L.Ed. 219 (1917) (river levy construction contractor held liable for increased cost of levy due to delay caused by river flooding) ]"); *Vogt Bros. Mfg. Co. v. United States,* 160 Ct.Cl. 687, 701 (1963) (holding "it was the plaintiff's responsibility to ascertain the availability of this particular component before agreeing ... to provide it as part of the heaters to be manufactured pursuant to the contract; and the plaintiff's unforeseen difficulty in finding a supplier did not have any legal effect upon the rights and obligations of the parties under the contract....").

In addition to *Brady* not being in conflict with the above-cited precedents, it was also in accord with the rule that the government is liable for any additional cost caused by its own delay. *See, e.g., Chalender v. United States,* 127 Ct.Cl. 557, 563–64, 119 F.Supp. 186, 190 (1954). Fairness is an equitable principle and its application in *Brady* took the form of requiring the party causing the additional cost, the government, to bear that cost. Unlike the facts in *Brady,* in the instant appeal there is no assertion that the agency in any way caused the contractor not to seek a pre-award exemption. It was the contractor's own neglect in not firming up the contract with the domestic subcontractor, Arban & Carosi (A & C), on which it based its bid on the contract in issue, which caused the contractor to seek a post-award BAA exemption.

Nor is there any harshness in requiring the contractor to bear the additional material costs. In *Brady,* harshness would have resulted since the difference in the actual cost of aluminum versus the expected cost was $50,806 which was 35.71% higher than expected.[1] In the instant appeal the difference between the expected domestic cost and the foreign cost was only $800 which was 0.33% higher than the domestic cost.[2] It is the A & C bid of $245,000 and not the actual cost claimed by the contractor of $282,000 that should be used in considering harshness. That was the amount on which the contractor based its original bid and that was the amount for which it would have obtained the materials had the contractor done what was reasonably necessary to finalize the contract with A & C. No written communication with A & C was ever attempted by Grimberg, only telephone calls. Board opinion at 2 (finding of fact No. 5). While it might be considered harsh to require the contractor to bear a 35.71% higher actual cost, a 0.33% increase does not even approach being harsh.

The majority opinion's reference to language in the BCA's discussion of *Brady* on remand is inapposite. The Board applied

---

1. [ ($190,000.87 (actual cost) − $140,000 (expected cost)) ÷ $140,000 (expected cost) ] × 100% = 35.71%.

2. $120,000 (foreign materials portion) × 1.06 (the 6% differential) + $117,000 (nonmaterial costs) = $244,200 (total foreign cost when adjusted with 6% differential). Percentage difference = [ ($245,000 (domestic price with A & C) − $244,200) ÷ $244,200] × 100% = 0.33%. The proper application of the differential requires it only be applied to the materials portion of the foreign item. *See, e.g., Allis–Chalmers Corp. v. Friedkin,* 481 F.Supp. 1256, 1266–68 (M.D.Pa. 1980). Then the nonmaterial portion of the foreign item is added back before comparing the foreign goods with the domestic goods. *Id.*

Footnote three of the majority contends these calculations are misleading. The majority does not, however, propose a different method of applying the differential. It is true that *Allis–Chalmers* was a protest by a domestic bidder of a contract award to a foreign bidder. The proper application of the differential is the same, however, whether it is for the purpose of determining the lowest bidder or the propriety of granting a BAA exemption. Both the statute and the executive order speak in terms of "materials" and not of labor, thus supporting the interpretation by the district court in *Allis–Chalmers* that the differential is only applied to the foreign materials.

this court's instructions and found "[i]t is the opinion of the Board that the price escalation of the domestic aluminum meets all existing criteria for granting an exception to the "Buy American' provisions." *Brady*, 84–1 BCA at 84,196. The fact that granting the exemption would not have resulted in a cost increase to the government is not a rationale which supports the finding that the exemption should have been granted. If obtaining the lowest cost to the government was the predominant policy consideration in issue, all foreign materials would be allowed whenever they cost any amount less than domestic materials, and Congress never would have enacted the Buy American Act. *See* 48 C.F.R. § 14.404–1(a)(1) (1987) (requiring contracts to be awarded to lowest bidder, absent compelling contrary reasons).[3] Instead the general policy of reducing costs to the government must be balanced with the underlying policy of the Buy American Act to give a preference to domestic materials and thereby protect American workers and industry. *See* Watkins, *Effects of the Buy American Act on Federal Procurement*, 31 Fed.Bar J. 191, 191 (1972). In regard to the policy of increasing "the public's perception of its Government as one which deals fairly with its contractors," 84–1 BCA at 84,197, *Brady* is substantially distinguishable from the facts of the instant appeal. As previously discussed, it was the government's delay in providing the exact dimensions for the aluminum sheets that prevented the contractor in *Brady* from entering a firm contract with ALCOA. Thus, holding for the contractor in *Brady* merely was in accordance with the rule that the government is liable for any additional cost caused by its own delay. *Chalender*, 127 Ct.Cl. at 563–64, 119 F.Supp. at 190. In contrast, in the instant appeal it was not the fault of the government that caused the failure of the contractor to firm up the subcontract on which it based its bid. Therefore the government should not be liable for the additional cost. *WRB*, 183 Ct.Cl. at 511–12.

The Claims Court and Comptroller General decisions cited by the majority do not support a holding for the contractor. The Claims Court in *L.G. Lefler, Inc. v. United States*, 6 Cl.Ct. 514 (1984), erroneously interpreted the *Brady* decision to hold that exemptions to the BAA are "equally applicable to post-award situations following the decision in *John T. Brady v. United States*, 693 F.2d 1380 (Fed.Cir.1982)." *Lefler* at 519 n. 5. As discussed above, this court in *Brady* made no such holding. Whether an exemption to the BAA should be granted was not even an issue in *Lefler;* therefore, any discussion about when such exemptions should be granted was purely dicta. An exemption had already been granted and the issue before the Claims Court was whether the government was entitled to an equitable adjustment credit on the theory that the contractor should be denied the benefit of the exemption since it was forced on the government. *Id.* at 517, 516. The facts in *Lefler* show that an exemption was appropriate, not due to the erroneous interpretation of *Brady* but because the contractor's bid was initially based on the foreign materials in issue, and even if the contractor based its bid totally on domestic materials it would have still been the lowest bid. Thus, an "equitable adjustment" in the government's favor was not merited.

Similarly, the decision of the Comptroller General in *Keuffel & Esser Co.*, 42 Comp. Gen. 608 (1963), does not support granting the exemption. That case involved protests of agency actions in two separate Invitations for Bids (IFB) which the plaintiff alleged were an inconsistent application of the BAA and Executive Order No. 10,582. *Id.* at 608–09. In the first invitation in issue the CG affirmed the agency's decision to award the contract to a bidder that included domestic materials which were priced in excess of the 6% differential allowed in Executive Order No. 10,582. *Id.* at 610–11. The CG found that the determination by

---

**3.** *But cf.* Watkins, *Effects of the Buy American Act on Federal Procurement*, 31 Fed.Bar J. 191, 204–05 (1972) (discussing hidden costs to the government inherent with the use of foreign materials, e.g., increased unemployment compensation, welfare, and loss of personal and corporate income tax revenue).

the Department of Defense that the purchase of the domestic materials in issue was not inconsistent with the public interest was a valid exercise of discretion under section 5 of the Executive order. *Id.* Regarding the second invitation, the CG affirmed the agency decision to award the contract to the bidder using foreign materials on the grounds the General Services Administration made a legitimate choice not to exercise its discretion to raise the 6% differential under Executive Order No. 10,-582. *Id.* at 612. The CG concluded that while the two agency actions at issue were inconsistent they were nevertheless valid since they were within the discretionary authority of the Executive order. *Id.* Similarly, the agency in the instant appeal validly exercised its discretion in determining that the cost of domestic materials was not unreasonable even though the cost was greater than the 6% differential.[4]

The majority also asserts the plain language of the Executive order requires that the Board be reversed. The majority contends the 6% price differential became mandatory because the head of the agency did not exercise his authority under section 5 to determine that the price of the domestic material was not unreasonable. This contention is without merit, however, and does not support the result suggested by the majority. The discretion authorized in section 5 of the Executive order was validly exercised.[5] The Board's findings of fact

are undisputed. The Board found that by final decision dated February 8, 1985, the contracting officer denied Grimberg's request for a BAA exemption. Board opinion at 4 (finding of fact No. 12). It is true the general rule is that discretionary authority authorized by statute cannot be delegated absent express provision for delegation in the statute. *See, e.g.,* 7 Comp.Gen. 482 (1928), and cases cited therein. It is this rule the majority opinion relies upon implicitly in contending the section 5 discretion was not validly exercised since it was not exercised by the head of the agency. However, the rule only applies to discretionary authority given by statute. In the instant appeal it is not discretionary authority granted by statute that is in issue. The statute in issue, the Buy American Act, provides that "unless the head of the department . . . concerned shall determine it to be inconsistent with the public interest, or the cost to be unreasonable, only . . . materials . . . produced in the United States . . . shall be acquired for public use." 41 U.S.C. § 10a. Thus, under the statutory language, no foreign materials can be purchased for public use unless the head of the agency exercised his statutorily granted discretion to determine that the cost of the domestic materials was unreasonable. It is not this exercise of discretion that is in issue in the instant appeal. Instead it is the exercise of discretion under the Executive order that is in issue. The Executive

4. The discretion in the instant appeal was exercised without a published regulation. The appellant argues this violated the notice requirements of the Administrative Procedure Act. However, since the majority opinion does not discuss this contention or rely on it as a rationale in support of its conclusion there is also no need to address it in this dissent.

5. Footnote one of the majority asserts the contract between Grimberg and the government explicitly prohibits the head of the agency from delegating his discretion under the executive order to the contracting officer, thus implying the contracting officer's denial of the post-award BAA exemption request was ineffective. The general definitions section of the contract referenced by the majority ("General Provisions, 1. Definitions, (a)") does not, in fact, contain such a provision. The term "delegate or delegation" does not appear therein. The provision

only limits the definition of "his duly authorized representative" as used in the provisions of the contract from including the contracting officer. Such boilerplate contract language cannot negate the unchallenged rule of law permitting the delegation of discretionary authority granted by executive regulation as opposed to that granted by statute.

For ease of reference the contract provision reads as follows:

1. DEFINITIONS [ ] (a) The term "head of the agency" or "Secretary" as used herein means the Secretary, the Under Secretary, any Assistant Secretary, or any other head or assistant head of the executive or military department or other Federal agency; and the term "his duly authorized representative" means any person or persons or board (other than the Contracting Officer) authorized to act for the head of the agency or the Secretary.

order reverses the burden of taking action by the head of the agency. Under the statute no foreign materials are ever allowed unless the head of the agency determines, *inter alia,* the domestic goods are unreasonably priced. Under the Executive order the purchase of foreign goods costing less than the domestic goods after the differential has been added will be allowed unless the agency determines that the cost of domestic goods is not unreasonable.

Although discretionary authority granted by statute may not be delegated, such authority authorized by regulation, as opposed to by statute, may be delegated. An example of this is 48 C.F.R. § 14.404–1(c). This part of the Federal Acquisition Regulations provides that "[i]nvitations may be cancelled and all bids rejected ... when ... *the agency head* determines in writing that —(1) Inadequate or ambiguous specifications were cited in the invitation; ... (6) All otherwise acceptable bids received are at unreasonable prices...." (Emphasis added.) Although the regulation requires the agency head to make the determination, it has been held the contracting officer may do so.[6] *See, e.g., National Forge Co. v. United States,* 779 F.2d 665 (Fed.Cir. 1985) (affirming the Claims Court's decision upholding the cancellation of a solicitation by the contracting officer on the grounds the contracting officer did not abuse his discretion under 48 C.F.R. § 14.404–1(c)(1) to cancel the solicitation); *Caddell Constr. Co. v. United States,* 7 Cl.Ct. 236 (1985) (affirming the contracting officer's cancellation of an IFB and stating "[t]he authority vested in the contracting officer to decide whether to cancel an IFB and readvertise is extremely broad. A determination concerning the unreasonableness of the prices bid is a matter of administrative discretion which should not be

questioned unless the determination is shown to be unreasonable or that there is a showing of fraud or bad faith."). *Id.* at 241; *In re Trebor Indus. Inc.,* Comp.Gen. Dec. B–228906 (4 Nov.1987), 87–2 CPD ¶ 446 (affirming the agency's cancellation of an IFB and holding that 48 C.F.R. § 14.404–1(c)(6) grants broad discretion on the part of the contracting officer that will not be disturbed absent a showing of fraud or bad faith); *In re Gott Corp.,* Comp.Gen. Decs. B–222586, B–223260 (5 Aug.1986), 86–2 CPD ¶ 154 (denying bidder's protest of rejection of bid on grounds the contracting officer validly exercised the discretion granted under 48 C.F.R. § 14.404–1(c)(6) for cancelling the IFB where all bids are unreasonable and reasoning that "[s]uch a determination is a matter of administrative discretion which we will not disturb unless it is clearly unreasonable or there is a showing of bad faith or fraud on the part of the contracting officer"); *In re T.L. James & Co.,* Comp.Gen.Dec. B–219443 (21 Oct.1985), 85–2 CPD 430 (denying protest of cancellation of IFB on grounds the protester had not met its burden of showing the contracting officer abused his discretion under 48 C.F.R. § 14.404–1 to cancel the bid).

Similarly, the discretion granted to the agency head under the Executive order in issue, No. 10,582, as amended, may be validly exercised by the contracting officer.[7] That discretion was exercised. Board opinion at 4 (finding of fact No. 12). The Board's finding that the agency validly exercised its discretion granted under section 5 of the Executive order denying the BAA exemption request is a finding of fact. The Board's findings of fact may only be set aside if they are fraudulent, capricious, so grossly erroneous as to imply bad faith, or are not supported by substantial evidence.

---

**6.** Although the Executive Agencies Procurement Act, 41 U.S.C. § 257, provides for the delegation of powers, there is no express delegation since 48 C.F.R. § 14.404–1(c) requires the head of the agency to make the determinations. Thus, as in the instant case, it is the delegation of authority given to the agency head by the regulation that is in issue, not the authority granted under the statute.

**7.** An Executive order may be equated to an Executive regulation and thus both treated the same with regard to the power to delegate discretionary authority. *Cf. Old Dominion Branch No. 496, Nat. Assoc. of Letter Carriers v. Austin,* 418 U.S. 264, 273 n. 5, 94 S.Ct. 2770, 2776, 41 L.Ed.2d 745 (1974) (finding an Executive Order valid because it was authorized by statute which provided " '[t]he President may prescribe *regulations* for the conduct of employees in the executive branch.' ") (Emphasis added.)

41 U.S.C. § 609(b) (1982); *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984).

Thus a post-award exemption on the facts of the instant appeal is unsupported by the rule followed recently in *Brady* and earlier in *Chalender*. Also, an exemption on the facts of the instant appeal would conflict with established precedents and with the above-cited general rule that the contractor is responsible for acquiring any materials which he agrees to supply to complete the contract.

## CONCLUSION

Post-award exemptions are only granted in very limited circumstances. They have been granted where it was impossible for the contractor to request a pre-award exemption or where the material in issue was unavailable domestically. Neither of these circumstances nor any other circumstances requiring equity exists in the present appeal. Thus, the decision of the Board denying an equitable adjustment should be affirmed.