**GRUMMAN DATA SYSTEMS CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 92–699C.

United States Court of Federal Claims.

Aug. 11, 1993.

David R. Hazelton, Washington, DC, attorney of record, for plaintiff. Robin L. Shaffert, Patrick O. Killian, and Latham & Watkins, of counsel.

Steven J. Gillingham, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and Major Patrick Lisowski, Dept. of the Army, of counsel.

## OPINION

FUTEY, Judge.

This contract case is before the court on plaintiff's motion for summary judgment and defendant's motion to dismiss. Plaintiff, Grumman Data Systems Corporation, lost a contract to build defendant a high performance scientific computer system, and argues that defendant breached its implied-in-fact contractual obligation to give fair and honest consideration to plaintiff's proposal. Plaintiff seeks to recover its proposal preparation and protest costs in this court and now asks the court to grant it summary judgment on the issue of defendant's liability.

Defendant counters that the court should dismiss plaintiff's claim for proposal preparation costs because plaintiff already has won a permanent injunction in district court to set aside defendant's original contract award and because plaintiff has not made the showing required for recovery of proposal preparation costs. Defendant further contends that the court should dismiss plaintiff's claim for protest costs because the court lacks jurisdiction to award plaintiff such costs.

### Factual Background

On June 28, 1990, the United States Army (Army) issued Request for Proposals No. DAAH03–90–R–0029 (RFP) seeking proposals for a high performance scientific computer system (HPSC System). The RFP states that the Army would use the HPSC System "primarily for scientifically-oriented, intelligence information-processing and missile system simulation." In addition to establishing technical requirements for the computer system, the RFP required offerors to demonstrate their hardware and software capabilities by solving a series of problems provided by the Army, to ensure that their equipment would meet the RFP's performance requirements. Finally, the RFP required offerors to propose a parallel computer that had at least four times the number of Central Processing Units (CPUs) that were re-

quired for the offeror to successfully complete the problems provided by the Army.

During the solicitation period, several offerors submitted questions to the Army regarding the RFP. The Army compiled the questions and its corresponding responses in Amendment 002, which the Army issued on August 29, 1990.

Four companies submitted proposals in response to the RFP, including plaintiff, Technology Applications, Inc. (TAI), the Boeing Company, and Nichols Research, Inc. The Army evaluated these proposals, issued seven additional amendments to the RFP, conducted tests of the offerors' proposed configurations, held oral discussions, and solicited Best and Final Offers, which the offerors were required to submit no later than March 22, 1991. Ultimately, the Army selected TAI as the successful offeror and, on April 19, 1991, awarded TAI the HPSC System contract.

On June 5, 1991, plaintiff filed an action in the United States District Court for the District of Columbia challenging the Army's contract award to TAI. *Grumman Data Sys. Corp. v. Secretary of the Army*, No. 91–1379, slip op., 1991 WL 126032 (D.D.C. June 28, 1991) [*Grumman I*]. Plaintiff sought the court's review of the Army's contract award based on its allegation that the Army violated applicable statutes during the procurement. The court concluded that the Army's award of the HPSC System contract to TAI was arbitrary and capricious, and issued a permanent injunction ordering the Army to set aside its award to TAI. *Id.* at 11.

In *Grumman I*, plaintiff argued that the Army violated Federal Acquisition Regulation (FAR) § 15.402(b)[1] by providing information to International Business Machines, Inc. (IBM), TAI's supplier, that it did not provide to other offerors. *Id.* at 5. Under FAR § 15.402(b), a contracting officer must "furnish identical information concerning a proposed acquisition to all prospective contractors." Plaintiff contended that, in violating FAR § 15.402(b), the Army breached its implied contractual obli-

1. 48 C.F.R. § 15.402(b) (1991).

gation to fairly and honestly consider every response to the Army's RFP. Plaintiff maintained that the Army's conduct in violating FAR § 15.402(b) and awarding the HPSC System contract to TAI was arbitrary, capricious and prejudicial to plaintiff.

The district court ruled in plaintiff's favor. First, the court found that certain structural errors existed in the Army's published Amendment 002, thereby violating FAR § 15.402(b). *Id.* at 7. Amendment 002's format consists of a list of offerors' questions to the Army regarding the RFP, followed by the Army's coinciding response to those questions. IBM posed written questions to the Army on July 16, 1990, and the Army responded in writing directly to IBM on July 30, 1990. While it lists other offerors' questions together with the Army's coinciding response, Amendment 002 provides only the Army's responses to IBM's inquiries—not IBM's corresponding questions. *Id.* at 6.

The district court then determined that the Army's failure to provide IBM's questions along with the Army's responses prejudiced plaintiff and other offerors by creating a "confusing" and "fundamentally misleading" situation. *Id.* at 7. For these reasons, the court concluded that the Army's award of the HPSC System contract to TAI "involved a clear and prejudicial violation of applicable statutes or regulations." *Id.* at 11. The court entered final judgment in plaintiff's favor and issued a permanent injunction ordering the Army to set aside its contract award to TAI and to resolicit the HPSC System contract. *Id.* at 2.[2]

On July 15, 1991, the Army moved to amend the district court's judgment in *Grumman I* and to vacate the court's permanent injunction order. The district court denied the Army's motion. *Grumman Data Sys. Corp. v. Secretary of the Army,* No. 91-1379, slip op. (D.D.C. August 28, 1991) [*Grumman II*].

In *Grumman II,* the Army argued that the district court based its decision in *Grumman I* on "misleading representations of fact" that plaintiff made regarding its knowledge of information supplied by the Army in Amendment 002. *Id.* at 3. The Army supported its argument with newly acquired evidence of conversations between employees of IBM and plaintiff, which suggested that plaintiff was aware of both IBM's exact questions to the Army and the Army's responses to those questions during the solicitation period. *Id.* at 5.

The Army, however, failed to prevail in its argument. First, the district court found that the Army had not made the threshold showing that it was excusably ignorant of its newly acquired evidence at the trial time and that it could not have discovered this evidence through due diligence. *Id.* In addition, the court found that the Army waived its right to present further evidence by failing to object to a court order that pronounced, essentially, that the court was prepared to issue a final decision based on the existing record. *Id.* at 6.

On October 28, 1991, the Army filed a notice of appeal as to both the district court's original order in *Grumman I* and its reconsideration decision in *Grumman II*. On February 12, 1992, at the Army's request, the United States Court of Appeals for the District of Columbia Circuit dismissed the Army's appeal notice. *Grumman Data Systems Corp. v. Stone,* No. 91-5394, slip op. (D.C.Cir. Feb. 12, 1992).

The Army resolicited the HPSC System contract on January 6, 1992. Plaintiff then sent a letter to the Army stating its intent not to participate in the new procurement. The Army received no proposal from plaintiff by March 20, 1992, the date on which all proposals were due.

Plaintiff filed a complaint in the United States Claims Court on November 1, 1991,

---

**2.** In *Grumman I,* the district court determined that judgment should be entered for plaintiff and "the case returned to the Army with the direction to terminate and resolicit the contract." No. 91-1379, slip op. at 2.

which it amended on November 12, 1991.[3] Plaintiff alleges that the Army breached its obligation to fairly and honestly consider plaintiff's proposal and seeks the costs that it incurred both in preparing its proposal for the HPSC System contract and in protesting the Army's contract award.

On February 27, 1992, plaintiff filed a motion for summary judgment on the issue of liability. Plaintiff argues that the district court's finding that the Army's contract award was arbitrary and capricious establishes that the Army breached its implied-in-fact contractual obligation to give fair and honest consideration to plaintiff's offer. Plaintiff maintains that the district court's determination should be conclusive in this court under the doctrine of collateral estoppel. Plaintiff concludes that, as a result of the district court's finding, it is entitled to recover its proposal preparation and protest costs in this court.

On July 21, 1992, defendant filed a response to plaintiff's summary judgment motion and a motion to dismiss. Defendant argues that this court must dismiss plaintiff's claim for preparation costs because the district court's injunction fully redressed plaintiff's injury and because plaintiff has failed to make the showing required for recovery of preparation costs. As well, defendant contends that this court should dismiss plaintiff's claim for protest costs because protest costs are unrecoverable in this instance. The court held oral argument on April 13, 1993, and the parties' motions now are ready for disposition.[4]

### Discussion

#### A. Proposal Preparation Costs [5]

As a threshold issue, defendant argues that the court should dismiss plaintiff's claim for proposal preparation costs because plaintiff already has won injunctive relief in district court. Plaintiff counters that it should be allowed to seek monetary damages in this court because the district court injunction was insufficient to remedy its losses.

■■■ The court will dismiss a complaint for failure to state a claim upon which relief may be granted under RCFC 12(b)(4) only if it appears beyond a doubt that the plaintiff has not alleged facts sufficient to support its claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mostowy v. United States*, 966 F.2d 668, 672 (Fed.Cir.1992). In ruling on a motion to dismiss for failure to state a claim, the court must accept as true the complaint's undisputed factual allegations, and should construe them in a light most favorable to the plaintiff. *Papasan v. Allain*, 478 U.S. 265, 283, 106

---

3. On October 29, 1992, the United States Claims Court was renamed the United States Court of Federal Claims, pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992). The United States Court of Federal Claims is the successor to the United States Claims Court in all respects.

4. On October 6, 1992, the court dismissed *Grumman Data Sys. Corp. v. United States*, No. 91–1562C, without prejudice, pursuant to the parties' stipulation, because plaintiff's claim in the district court was pending at the time plaintiff filed its complaint in this court, and plaintiff's district court claim appeared to arise from the same operative facts as its instant action. *See* 28 U.S.C. § 1500 (1988); *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1024 (Fed.Cir. 1992), *aff'd, Keene Corp. v. United States*, — U.S. —, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1562–63 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989).

On October 7, 1992, plaintiff filed a new complaint based on the same claim asserted in its November 12, 1991, complaint. Defendant filed its answer to plaintiff's complaint on December 7, 1992. The court issued an order allowing the parties' motion to waive duplicate filings on October 30, 1992.

5. Plaintiff uses the terms "bid preparation costs," "bid and proposal costs," and "bid proposal costs" interchangeably. The procurement procedure at issue was a negotiation. In a negotiation, potential contractors, known as "offerors," submit their contract offers, known as "proposals," in response to the government's solicitation, known as a "request for proposals." 48 C.F.R. § 15.100–15.1005. *See also, YRT Serv. Corp. v. United States*, 28 Fed.Cl. 366, 397–98 (1993); JOHN CIBINIC, JR. AND RALPH C. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 523 (1986). Thus, plaintiff is an aggrieved "offeror" that seeks its "proposal preparation" costs.

S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)); *Gould v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). All that is required to withstand a motion to dismiss is " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gould,* 935 F.2d at 1276 (*quoting Conley,* 355 U.S. at 47, 78 S.Ct. at 103 [footnote omitted] ).

■ Certain equitable and legal redress has long been available to prospective contractors who believe that they have been wronged by the government's procurement procedures. *See, e.g., Keco Indus., Inc. v. United States,* 428 F.2d 1233, 192 Ct.Cl. 773, 780 (1970); *Heyer Prod. Co. v. United States,* 140 F.Supp. 409, 135 Ct.Cl. 63, 69 (1956); *Scanwell Lab., Inc. v. Shaffer,* 424 F.2d 859, 876 (D.C.Cir.1970). Unsuccessful offerors and bidders who protest the government's award of a contract have two potential avenues of recovery in the federal court system.[6] First, protestors may seek declaratory and injunctive relief in district court. *CACI, Inc.–Fed. v. United States,* 719 F.2d 1567, 1572 (Fed.Cir.1983); *Delta Data Sys. Corp. v. Webster,* 744 F.2d 197, 207 (D.C.Cir.1984).[7] Second, protestors may attempt to recover the expenses that they incurred in preparing their proposal in either district court or the Court of Federal Claims. *Coastal Corp. v. United States,* 713 F.2d 728, 730 (Fed.Cir.1983); *Continental Business Enter., Inc. v. United States,* 452 F.2d 1016, 196 Ct.Cl. 627, 629 (1971); *Keco,* 192 Ct.Cl. at 785.[8]

■ In the instant case, plaintiff already has won injunctive relief in district court. The district court entered judgment in plaintiff's favor and ordered the Army to set aside its HPSC System contract award. Plaintiff now seeks monetary damages in this court, however, because the district court's injunction allegedly failed to adequately remedy plaintiff's losses. Plaintiff contends that the Army's new solicitation was so different from the original solicitation that plaintiff would have had to prepare an entirely new proposal to compete effectively. Plaintiff concludes that most of its preparation costs were wasted as a result of the new solicitation's revisions.

The court disagrees that it may award contract protestors monetary damages where they already have received injunctive relief in district court. The court's primary purpose in allowing protestors standing to challenge the government's procurement process is not to vindicate individual entitlement rights to government business. Rather, the court's objective is to advance the public interest by ensuring that the government obtains the most advantageous contracts by complying with applicable regulations and treating all bidders and offerors without discrimination. *CACI,* 719 F.2d at 1572; *Delta Data,* 744 F.2d at 206; *Keco,* 192 Ct.Cl. at 781. When protestors assert their personal rights by suing the government for injunctive relief or monetary damages, they simultaneously

---

6. In certain contract award controversies, protestors may seek relief outside of the federal court system, before either the Comptroller General of the United States, pursuant to 31 U.S.C. § 3553 (1988), or the General Services Board of Contract Appeals, pursuant to 40 U.S.C.A. § 759(f) (West Supp.1993).

7. The basis for recovery of equitable relief in district court is that the government violated statutory and procedural requirements. *CACI, Inc.–Fed. v. United States,* 719 F.2d 1567, 1574 (Fed.Cir.1983); *Diebold v. United States,* 947 F.2d 787, 803–04 (6th Cir.1991). District courts have jurisdiction to review agency actions under § 704 of the Administrative Procedure Act (APA), 5 U.S.C. § 704 (1988), and set aside a contract award under APA § 706(2).

8. The basis for recovery of monetary damages in a district court or in the Court of Federal Claims is that the government breached its implied contract to fairly and honestly consider all responsive bids or proposals. *CACI, Inc.–Fed. v. United States,* 719 F.2d 1567, 1573 (Fed.Cir. 1983); *Armstrong & Armstrong, Inc. v. United States,* 356 F.Supp. 514, 517 (E.D.Wash.1973), *aff'd,* 514 F.2d 402 (9th Cir.1975). District courts have jurisdiction, concurrent with the Court of Federal Claims, to award up to $10,000.00 in proposal preparation costs. *Delta Data Sys. Corp. v. Webster,* 744 F.2d 197, 207 (D.C.Cir.1984); 28 U.S.C. § 1346(a)(2) (1988). The Court of Federal Claims has exclusive jurisdiction to award costs in excess of $10,000.00. 28 U.S.C. § 1491(a)(1) (1988).

advance the public interest in preventing the granting of contracts through arbitrary and capricious action. *CACI,* 719 F.2d at 1572 *(citing Scanwell Laboratories,* 424 F.2d at 864); *Keco,* 192 Ct.Cl. at 779, 782.

Thus, in fashioning a remedy for aggrieved protestors, the court seeks to balance competing interests. On one hand, the court attempts to grant relief that is adequate enough to provide individual protestors incentive to challenge arbitrary and capricious contract awards. *Keco,* 192 Ct. Cl. at 781–82; *Ulstein Maritime, Ltd. v. United States,* 833 F.2d 1052, 1059 (1st Cir.1987). On the other hand, the court must ensure that relief is not provided "at a cost to the government that will greatly exceed the benefits derived from requiring observance of the proper procedures in the particular case." *Delta Data,* 744 F.2d at 207.

The equitable and legal remedies available to aggrieved protestors each exact a substantial price from the government. Injunctions disrupt the procurement process and delay the award and execution of contracts that may be vital to the national interest. *Diebold v. United States,* 947 F.2d 787, 804 (6th Cir.1991) *(citing Hayes Int'l Corp. v. McLucas,* 509 F.2d 247, 258 (5th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975)). Monetary damages drain the public fisc. *See Delta Data,* 744 F.2d at 206–07; *Monteverdi v. Secretary DHHS,* 19 Cl.Ct. 409, 429 (1990). Given the competing interests that the court must satisfy in contract protest cases, it is appropriate that protestors have the opportunity to obtain either legal or equitable relief, but not both.

Each form of redress available to contract protestors has particular advantages and disadvantages, which protestors should assess carefully before filing an action against the government. In the instant case, plaintiff could have sought monetary damages in lieu of an equitable remedy. By bringing an action for its proposal preparation costs, plaintiff would have stood to obtain a fixed, certain damage award, but would have relinquished the opportunity to win a new contract.[9]

Instead, plaintiff chose to seek equitable relief. The injury that plaintiff asserts in the instant case is that the Army's unequal treatment of another offeror deprived plaintiff of the opportunity to have its proposal fairly and honestly considered. The district court's injunction barring the Army's award corrected this injury by requiring the Army "to repeat the [procurement] process under circumstances that ... eliminate[d] the alleged taint of the prior proceedings." *CACI,* 719 F.2d at 1575. In exchange for the opportunity to win a new contract, however, plaintiff assumed the risk that the government either would change its contract requirements or would choose not to resolicit the contract at all, thereby rendering futile some or all of plaintiff's original preparation costs.[10] Plaintiff cannot now seek to recover its preparation costs in this court, however, where it already received a change for a new contract award. *See Continental,* 196 Ct.Cl. at 638–39; *Delta Data,* 744 F.2d at 207; *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 732 (2d Cir.1983); *Hayes,* 509 F.2d at 258; *Simpson Elec. Co.*

9. The court's rationale in awarding bid and proposal preparation costs "is that the recipient was injured by the unjust denial of recovery of such costs, which recovery presumably would have occurred had it obtained the contract." *Vulcan Eng'g Co. v. United States,* 16 Cl.Ct. 84, 88 (1988).

10. Pursuant to 48 C.F.R. § 15.606, the government can change its contract requirements at any time during the source selection process without liability to offerors. The government simply may amend its original solicitation under 48 C.F.R. § 15.606(a), or, if the change is substantial enough, the government may cancel the original solicitation entirely and issue a new one, pursuant to 48 C.F.R. § 15.606(b)(4). *SMS Data Prods. Group, Inc. v. Austin,* 940 F.2d 1514, 1518 (Fed.Cir.1991); *John C. Grimberg Co. v. United States,* 869 F.2d 1475, 1483 (Fed.Cir. 1989). As long as the government acts properly in deciding to make such changes, it need not compensate offerors for any costs that they incur as a result of the changes. *Grimberg,* 869 F.2d at 1483; *Nat'l Forge Co. v. United States,* 779 F.2d 665, 667–68 (Fed.Cir.1985). *See also, Am. Gen. Leasing, Inc. v. United States,* 587 F.2d 54, 218 Ct.Cl. 367, 374 (1978); *Keco Indus., Inc. v. United States,* 492 F.2d 1200, 203 Ct.Cl. 566, 577 (1974).

*v. Seamans,* 317 F.Supp. 684, 688 (D.D.C. 1970).[11]

### B. *Protest Costs*

▮ In ruling on a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hamlet v. United States,* 873 F.2d 1414, 1415 (Fed.Cir.1989); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). If the undisputed facts reveal any possible basis on which the nonmoving party might prevail, the court must deny the motion. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686; *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint, however, the court may consider relevant evidence in order to resolve the factual dispute. *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947); *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir. 1991). Plaintiff bears the burden of establishing subject matter jurisdiction. *KVOS, Inc. v. Assoc. Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Rocovich,* 933 F.2d at 993.

Plaintiff argues that this court has jurisdiction to award the costs that plaintiff incurred in protesting the government's contract award in district court.[12] Defendant counters that the court cannot grant plaintiff's protest costs absent the govern-

ment's waiver of sovereign immunity regarding these costs.

▮ This court, like its predecessor, the Court of Claims, is a court of limited jurisdiction. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428, *aff'd,* 758 F.2d 665 (Fed.Cir.1984). The court's jurisdiction to entertain claims and to grant relief extends only so far as the United States has waived its sovereign immunity from suit. *Testan,* 424 U.S. at 399, 96 S.Ct. at 953 (*citing United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)); *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993). The waiver of sovereign immunity must be expressed unequivocally and cannot be implied. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980); *Testan,* 424 U.S. at 399, 96 S.Ct. at 953; *Zumerling v. Marsh,* 783 F.2d 1032, 1034 (Fed.Cir.1986). As a general rule, absent specific legislation to the contrary, the costs of litigation, whether legal, accounting, secretarial, or other, are not recoverable against the United States. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 265–68, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975); *Texas Instruments, Inc. v. United States,* 991 F.2d 760, 763 (Fed.Cir.1993); *Kania v. United States,* 650 F.2d 264, 227 Ct.Cl. 458, 466–67, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); 28 U.S.C. § 2412(a).

▮ Plaintiff argues that the Tucker Act authorizes the court to award attor-

---

**11.** Some courts consider the award of injunctive relief to be based on the protestor's expectations, and preparation costs to be based on the protestor's reliance interests. *See, e.g., Diebold,* 947 F.2d at 804; *Delta Data,* 744 F.2d at 207; *La Strada Inn, Inc. v. United States,* 12 Cl.Ct. 110, 115 (1987). As a general rule of contract law, an aggrieved party cannot recover both reliance and expectation damages. *Nat'l Control Corp. v. Nat'l Semiconductor Corp.,* 833 F.2d 491, 499 (3d Cir.1987); RESTATEMENT (SECOND) CONTRACTS §§ 347, 349 (1981).

**12.** Plaintiff also requested protest costs in the district court. The district court, however, did not address this issue in *Grumman I.* While plaintiff's district court complaint does not list a specific figure for protest costs, plaintiff indicated at oral arguments before this court that it had requested an amount in excess of $10,000.00. If so, then the district court could not provide plaintiff's requested relief because district courts lack jurisdiction to award more than $10,000.00 in claims against the government. 28 U.S.C. § 1346(a)(2). *See also, Delta Data,* 744 F.2d at 207.

ney fees in contract breach cases.[13] The court, however, does not construe this statute so broadly. *See Zumerling*, 783 F.2d at 1034; *Fidelity Construction Co. v. United States*, 700 F.2d 1379, 1387 (Fed. Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398, 96 S.Ct. at 953. The basis for plaintiff's instant suit is the government's implied contract to fairly consider proposals, a contract that plaintiff formed by submitting its proposal in response to the Army's RFP. *See Keco*, 192 Ct.Cl. at 780; *Heyer Products*, 135 Ct.Cl. at 69. In cases where the government has breached that implied contract, however, this court has asserted jurisdiction under the Tucker Act to award plaintiffs only their proposal preparation costs. *See, e.g., Excavation Constr., Inc. v. United States*, 494 F.2d 1289, 204 Ct.Cl. 299, 301 (1974); *Keco*, 192 Ct.Cl. at 785; *Contract Custom Drapery Serv. v. United States*, 6 Cl.Ct. 811, 819 (1984), *aff'd* 785 F.2d 321 (Fed.Cir.1985). Contrary to plaintiff's assertion, attorney fees and other litigation expenses are consequential damages that this court normally does not award in contract breach cases. *Kania*, 227 Ct.Cl. at 467; *N. Helex Co. v. United States*, 524 F.2d 707, 207 Ct.Cl. 862, 886 (1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976).

■ Plaintiff next maintains that Congress intended for offerors to recover their protest costs in all forums, including this court. Under the Competition in Contracting Act of 1984 (CICA), 31 U.S.C. § 3554, which governs proceedings in the General Accounting Office (GAO), the Comptroller General of the United States has the authority to grant aggrieved offerors the costs of filing and pursuing a protest, including attorney's fees. Plaintiff contends that it is "nonsensical" to assume that Congress would allow recovery of protest costs in the GAO but not in this court.

While CICA permits the Comptroller General to award protest costs, this statute does not, by analogy, allow this court to award such relief. *See Johns–Manville Corp. v. United States*, 893 F.2d 324 (Fed. Cir.1989). Indeed, CICA's explicit waiver of sovereign immunity regarding protest costs before the GAO only highlights the absence of a similar provision authorizing the recovery of such costs in this court.

Finally, plaintiff reasons that, as a policy matter, the court should award plaintiff its protest costs to preserve the incentives for future offerors to challenge arbitrary and capricious governmental action in awarding contracts. While allowing recovery of protest costs may provide claimants additional stimulus to challenge improper contract awards, however, sovereign immunity "is not to be waived by policy arguments." *Lichtman v. Office of Personnel Management*, 835 F.2d 1427, 1428 (Fed.Cir.1988) (*quoting United States v. New York Rayon Importing Co.*, 329 U.S. 654, 663, 67 S.Ct. 601, 605–06, 91 L.Ed. 577 (1947)).

Despite plaintiff's contentions, the court is unaware of any statute allowing plaintiff to recover its protest costs in this court.[14] The court agrees with past Claims Court decisions holding that, in the absence of an appropriate waiver of sovereign immunity, the court lacks jurisdiction to award plaintiff the costs incurred from protesting the government's procurement decision. *Coflexip & Serv., Inc. v. United States*, 20 Cl.Ct. 412, 415 (1990); *AT & T Technologies, Inc. v. United States*, 18 Cl.Ct. 315, 325–26 (1989). *See also, Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Mitchell*,

---

13. Pursuant to 28 U.S.C. § 1491 (1988), the court has jurisdiction to render judgment upon "any claim against the United States founded ... upon any express or implied contract with the United States...."

14. This court does have jurisdiction to award attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(F) (1988). *M.A. Mortensen Co. v. United States*, 996 F.2d 1177, 1180–81 (Fed.Cir. 1993); *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 251 (Fed.Cir.1985). Plaintiff concedes, however, that it does not qualify for recovery under EAJA.

445 U.S. at 538, 100 S.Ct. at 1351–52; *Texas Instruments*, 991 F.2d at 768. *But see Crux Computer Corp. v. United States*, 24 Cl.Ct. 223, 226 (1991).

### Conclusion

For the reasons stated above, the court denies plaintiff's motion for summary judgment, and grants defendant's motion to dismiss plaintiff's claim for proposal preparation and protest costs. Accordingly, the Clerk is directed to dismiss plaintiff's complaint. No costs.